**Joseph M. LALLEY, Plaintiff,**

v.

**BETHLEHEM STEEL CORPORATION and United Steelworkers of America, Local No. 2603, Defendants.**

**No. CIV–86–854C.**

United States District Court,
W.D. New York.

Jan. 19, 1989.

Wyssling, Schwan & Montgomery (Kathleen O'Hara, of counsel), Buffalo, N.Y., for plaintiff.

Hodgson, Russ, Andrews, Woods & Goodyear (Anne S. Simet, of counsel), Buffalo, N.Y., for defendant Bethlehem Steel Corp.

E. Joseph Giroux, Buffalo, N.Y., for defendant United Steelworkers of America, Local No. 2603.

## DECISION AND ORDER

CURTIN, District Judge.

This action is brought pursuant to § 301 of the Labor Management Relations Act [LMRA], 29 U.S.C. § 185, by a former employee of defendant Bethlehem Steel Corporation [Bethlehem]. Plaintiff alleges breach by Bethlehem of the Collective Bargaining Agreement [CBA] in effect between Bethlehem and defendant United Steelworkers of America, Local Union No. 2603 [Union], and breach by the Union of its duty of fair representation. Defendants

now move for summary judgment dismissing plaintiff's complaint, pursuant to Fed. R.Civ.P. 56. Items 21, 25.

*Facts*

On December 27, 1982, Bethlehem announced that it would eliminate nearly 10,000 jobs by closing most of its steel operations in Lackawanna, New York. Bethlehem did, however, maintain operations in some parts of the Lackawanna plant, including the 13″ bar mill roll shop No. 484 ["484 Department" or "roll shop"] in which plaintiff had worked. Item 26. On October 1, 1983, a Memorandum of Understanding between Bethlehem and the Union went into effect declaring the 484 Department to be "partially shut down." *See* Affidavit of Larry D. Sampsell, Item 25, ¶ 5, and Exh. A attached thereto. This meant that employees with rights to employment in the 484 Department would be eligible for shutdown pensions or severance pay pursuant to Article XVIII of the CBA. *Id.; see also* Exh. F, attached to Item 25.

Plaintiff was one of the employees who elected to take severance. He had worked at Bethlehem since July 8, 1965 (his "continuous service" date), and had bid into the 484 Department on June 13, 1968. Item 32, p. 3. Between 1968 and 1980, plaintiff was periodically laid off from the plant, and was also periodically laid off or transferred from the 484 Department. *See* Exh. G, attached to Item 25. On May 15, 1980, plaintiff was laid off from the 484 Department and the plant. *Id.* He continued to accrue seniority for two years following his layoff. When he was not recalled, and after meeting with representatives of both the Union and Bethlehem, plaintiff elected to take severance on February 14, 1984. Item 32, p. 3.

In February of 1986, two years after taking his severance, plaintiff learned that other Bethlehem employees, identified in the complaint as Charles Frey, Gerard Grosso, and William McLaughlin (Item 1, ¶¶ 23–28), had been recalled to the 484 Department, individuals who plaintiff believed had less seniority than he did. Plaintiff contacted Arthur Sambuchi, president of Local No. 2603, to inquire into the situation. On February 14, 1986, Mr. Sambuchi informed plaintiff that he was ineligible for recall since he had taken severance and his five-year recall rights had expired. *See* Item 31, ¶ 13. Plaintiff subsequently spoke with John LaCross, the union steward in the roll shop, who signed plaintiff's grievance and forwarded it to Bethlehem foreman Robert Heckl, who also signed it. Exh. C, attached to Item 31. Several days later, plaintiff was advised by Mr. LaCross that Bethlehem officials had returned the grievance and that the Union would not process it further because plaintiff had previously severed his employment with Bethlehem. Items 24, 26, 32. Plaintiff never received a written response to the grievance. Item 32, p. 4.

On April 7, 1986, plaintiff filed a complaint against the Union with the National Labor Relations Board [NLRB], alleging that the Union breached its duty to fairly represent him. The charge was dismissed by the NLRB on May 12, 1986, and no appeal was taken. Thereafter, plaintiff commenced this lawsuit on September 9, 1986, in which he claims that Bethlehem's recall of less senior employees was a breach of the CBA, and that the Union's failure to process his grievance concerning the recall of those employees was a breach of its duty of fair representation, all in violation of § 301 of the LMRA, 29 U.S.C. § 185. Item 1.

*Arguments*

In support of its motion for summary judgment, the Union contends, first, that plaintiff's claim is untimely under the six-month statute of limitations applicable to § 301. According to the Union, the September 9, 1986, commencement date was more than six months from the time at which plaintiff knew or should have known that the breach occurred—*i.e.*, when Mr. Sambuchi made it clear to plaintiff in February, 1986, that he would not accept the grievance. Item 24, pp. 7–10. In response, plaintiff contends that the breach did not occur until March 19, 1986, when Mr. LaCross informed plaintiff that Bethlehem had rejected his grievance at the first step

and that the Union would not process the grievance any further. Item 32, pp. 5–9.

The Union also contends that, should the court reach the merits of plaintiff's claim, it must dismiss the complaint since the record reveals no breach of the duty of fair representation. According to the Union, once plaintiff elected to take his severance in February, 1984, he was no longer an employee within the bargaining unit and thus the Union owed him no duty as of February or March of 1986 when the alleged breach occurred. Item 24, pp. 10–13. The Union further contends that its decision not to take plaintiff's grievance any further did not amount to unfair representation since that decision was in no way arbitrary, discriminatory, or in bad faith, and that a Union has no duty to process a grievance which it determines in its discretion to be meritless. *Id.*, pp. 13–19. Plaintiff responds that since several other Bethlehem employees had been recalled to work after taking severance, that event does not necessarily terminate the Union's duty of fair representation. Item 32, pp. 10–16. Plaintiff argues further that the record demonstrates sufficient evidence of arbitrary, discriminatory, or bad faith conduct on the part of the Union to allow his claim to proceed. According to plaintiff, the Union's decision not to process his grievance arbitrarily ignored Bethlehem's prior practice of allowing previously severed employees to return to work. *Id.*, pp. 22–24. Plaintiff also contends that there is a substantial question of Union misconduct present here in that Mr. Sambuchi offered to help plaintiff get reemployed only if plaintiff would agree to lie about his status with the company. *Id.*, p. 24.

Bethlehem argues in support of its summary judgment motion that plaintiff has failed as a matter of law to demonstrate any breach of the CBA. According to Bethlehem, the record demonstrates that all three employees alleged to have been wrongly recalled before plaintiff had more continuous service seniority than plaintiff. Additionally, Bethlehem argues that under the CBA, the three recalled employees had retained indefinite recall rights to their home unit (484 Department) since they were working elsewhere in the plant at the time of their recall and had not previously refused recall to a craft position. Thus, Bethlehem contends, plaintiff cannot claim a violation of the CBA on the basis of the recall of Messrs. Frey, Grosso, and McLaughlin. Item 26, pp. 7–13. Plaintiff acknowledges the greater continuous service seniority of those employees, but responds that questions of fact exist as to whether Bethlehem has consistently interpreted the CBA to allow for unlimited recall rights for craft status employees recalled to the 484 Department, which no longer had any craft positions. Item 32, pp. 16–22.

Bethlehem additionally contends that plaintiff's voluntary severance from the company removed any obligation it may have had to accept plaintiff's grievance, and thus there was no breach of the CBA. Item 26, pp. 14–16. Plaintiff responds that Bethlehem's rehiring of certain other severed roll shop employees raises questions of material fact as to whether the company's refusal to accept his grievance amounted to a breach of the CBA. Item 32, pp. 10–16.

Finally, Bethlehem argues that plaintiff's claim is barred since his grievance was not filed within the 30–day statute of limitations set forth in the grievance procedures of the CBA.[1] According to Bethlehem, the basis for plaintiff's grievance was the recall of Mr. Frey on January 4, 1984, more than one month before plaintiff's voluntary severance and more than two years before the grievance was filed. Furthermore, Bethlehem contends that plaintiff's argument that he did not discover any violation of his CBA rights until February, 1986, is

---

**1.** Article XI, § 1(d), ¶ 11.01.07, provides in relevant part:

Except as otherwise expressly provided in this Agreement, any complaint to be considered in the complaint and grievance procedure shall be discussed with the foreman within 30 calendar days after the date on which the facts or events upon which the complaint is based shall have existed or reasonably should have become known to the Employee or Employees affected thereby....
Exh. A., attached to Item 1.

without merit since plaintiff had a duty to investigate whether anyone was being recalled to the 484 Department at the time he took his severance. Item 26, pp. 17–18. Plaintiff responds that the relevant date for the purpose of his claim before this court is the date on which the Union breached its duty to fairly represent him, and that his claim was timely brought within six months of that date. Item 32, p. 7.

*Discussion*

As an initial matter, the parties agree that the six-month statute of limitations provided by § 10(b) of the National Labor Relations Act [NLRA] governs plaintiff's "hybrid" § 301/fair representation claims against both the employer and the Union. *See DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 169–71, 103 S.Ct. 2281, 2293–94, 76 L.Ed.2d 476 (1982). The disagreement between the parties in this respect centers around when those claims accrued.

> [W]here an employee bringing suit against his employer for breach of contract also alleges that the union representing him in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation, the claims against both the employer and the union accrue "no later than the time when plaintiff[ ] knew or reasonably should have known that such a breach had occurred, even if some possibility of nonjudicial enforcement remained."

*King v. New York Telephone Co., Inc.*, 785 F.2d 31, 34 (2d Cir.1986) (quoting *Santos v. District Council*, 619 F.2d 963, 969 (2d Cir.1980)).

■ Under the circumstances set forth in the record before this court, I find that plaintiff's claim was brought within the above standards and is thus timely. Before commencing a claim in this court, plaintiff was required to exhaust the administrative grievance procedure available to him under the CBA. *See Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652–53, 85 S.Ct. 614, 616–17, 13 L.Ed.2d 580 (1965). He was not able to get a Union grievanceman to sign his grievance, and thereby initiate the administrative procedure, until March 19, 1986, and it was therefore reasonable for plaintiff to believe that he might be recalled to work as a result of that grievance. Thus, it was also reasonable for plaintiff to believe that by signing his grievance at that time, the Union was undertaking to fairly represent him within the framework of the CBA. The 30–day requirement in the CBA does not require a different result at this juncture; that requirement relates not to the accrual of the cause of action for breach of the duty of fair representation but to the reasonableness of the conduct of both defendants in refusing to process plaintiff's grievance any further for the reason that it was untimely filed. Accordingly, defendants' summary judgment motions are denied on statute of limitations grounds.

■ In considering the merits of plaintiff's claim, the court's starting point is *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), which sets forth the standard for determining liability under LMRA § 301. To establish liability, plaintiff must show both that (1) the employer breached the CBA, and (2) the Union's decision not to pursue his grievance was "arbitrary, discriminatory or in bad faith." *Id.* at 190–92, 87 S.Ct. at 916–18. Clearly, failure to prevail on the first element of this standard obviates the need to consider the second. *Palancia v. Roosevelt Raceway, Inc.*, 551 F.Supp. 549, 551 (E.D.N.Y. 1982), *aff'd*, 742 F.2d 1432 (2d Cir.1983);[2]

---

**2.** In determining § 301 claims under the *Vaca v. Sipes* standard, courts have alternately begun their analyses by considering first the claim against the union and then the claim against the employer, or as in the *Palancia* case, first the claim against the employer. Whatever sequence used, failure to prove either element obviates the need to consider the other. The *Palancia* approach—*i.e.*, consideration of the claim for breach of collective bargaining agreement first, appears to the court to be the preferred analytical course in the instant case, where the plaintiff's § 301 claim is based primarily on Bethlehem's conduct in allegedly (a) hiring less senior individuals, (b) arbitrarily refusing to rehire plaintiff after taking severance, and (c) rejecting his grievance at the first step of the grievance procedure.

*see also Johnson v. Soft Drink Workers Union, Local 812,* 568 F.Supp. 1203, 1205 (S.D.N.Y.1983). For the purposes of the motions before it, it is thus necessary for the court to first determine whether any genuine issues of material fact exist, sufficient to preclude summary judgment, as to whether Bethlehem breached the CBA.

■ The essence of plaintiff's complaint with regard to Bethlehem is that it breached its obligations to plaintiff under the CBA by recalling three individuals (Messrs. Frey, Grosso and McLaughlin) to the 484 Department who had less senior rights in that department than plaintiff. Under the CBA, seniority rights are determined by the length of continuous service to Bethlehem, calculated from the date on which the employee first began work at the plant. *See* Article X, §§ 1, 2 of the CBA, attached as Exh. D to Item 25.[3] An employee who is laid off from both the 484 Department and the plant has a period of five years in which to be recalled, and if not recalled within that period, his continuous service with Bethlehem is broken and he is removed from the employment rolls. *See* Article X, § 3 of the CBA, attached as Exh. D to Item 25.[4] If, however, the employee laid off from the 484 Department had enough seniority to retain employment in a "labor pool" or to bid on a vacancy in another department of the plant, and was actively employed at the plant at the time of his recall to his home department, he retains recall rights to his home department indefinitely. *See* Affidavit of Larry D. Sampsell, Item 25, ¶ 8; *see also* Article X, §§ 10, 12 of the CBA, attached as Exh. D to Item 25. Once an employee is recalled to his home department, he must make an election to accept or refuse the recall. *Id.* If he refuses the recall, the office which issued the recall is notified and that employee's name is removed from the department seniority roster. *Id.; see also* Item 26, p. 11. An exception to this rule is that an employee who held a craft position could refuse a recall to a non-craft position without losing his right to recall to his craft position in his home department. *See* Supplemental Agreement on Craft Jobs (December 2, 1965) [Craft Agreement], attached as Exh. E to Item 25.[5] Article XVIII of the CBA provides for severance allowance to be paid in the event of permanent or partial shutdown (*see* Article XVIII, § 1(c), attached as Exh. F to Item 25); an employee who elects severance breaks his plant continuous service and is dropped from the employment rolls. Article XVIII, §§ 3, 4 of the CBA, attached as Exh. F to Item 25.

It is undisputed in the instant case that the individuals claimed to have been re-

---

3. Article X of the CBA provides as follows:

*Section 1. Factors Affecting*

Except where a local seniority agreement provides for some greater measure of service length than Plant continuous service, Plant continuous service shall be used for all purposes in which a measure of continuous service is utilized.

\* \* \* \* \* \*

*Section 2. Continuous Service*

(a) Starting Date—Break In: ... [T]he length of continuous service of an Employee shall be computed from the date on which he first began work at the Plant, except that such length of service shall be broken and no prior period or periods of employment shall be counted

(1) if he shall voluntarily quit his employment; ...

(5) if his length of service shall be broken in accordance with the provisions of Article XVIII [of the CBA].

Exh. D, attached to Item 25.

4. Article X, § 3, provides:

*Section 3. Continuous Service*

(a) Continuation When Absent: ... [I]f an Employee is absent from the Plant because of layoff or physical disability, he shall continue to accumulate continuous service during such absence for two years, and for an additional period equal to (i) three years, or (ii) the excess, if any, of his length of continuous service at commencement of such absence over two years, whichever is less....

5. The Craft Agreement provides that:

Existing practices in respect of demotion from craft jobs ... to jobs of lower job classes in connection with the decreasing of the working force shall continue in effect. However, an employee who has qualified as a craftsman and who is demoted from a craft job in connection with a force reduction may thereafter fill a vacancy in the craft for which he is qualified without further determination of his qualifications.

Supplemental Agreement on Craft Jobs (December 2, 1965), § 5, attached as Exh. E to Item 25.

called in violation of plaintiff's seniority rights all had greater plant continuous service than plaintiff. Plaintiff contends, however, that in recalling Messrs. Frey, Grosso, and McLaughlin to the 484 Department ahead of plaintiff, Bethlehem violated Article X, § 8 of the CBA, which provides that:

> [R]ecalls after layoff and other practices affected by seniority shall be in accordance with Plant service provided that, (a) demotions, layoffs and other reductions in force shall be made in descending job sequence order starting with the highest affected job and with the Employee on such job having the least length of Plant continuous service, and (b) the sequence on a recall shall be made in the reverse order so that the same Employees return to jobs in the same positions relative to one another that existed prior to the force reductions.

Article X, § 8 of the CBA, attached as Exh. D to Item 25; *see also* Affidavit of William R. Tobin, Item 30, ¶¶ 7–8. Further, as provided in Article X, § 12:

> If an Employee accepts transfer under this Section his continuous service in the unit from which he transfers will be canceled 30 days after such transfer, provided, however, that during such 30–day period such Employee may voluntarily return to the unit from which he transferred or Management may return him to that unit because he cannot fulfill the requirements of the job....

Article X, § 12(e) of the CBA, attached as Exh. D to Item 25. According to plaintiff, the three individuals recalled to the 484 Department ahead of him had previously transferred out of that department and had not returned to that department within the 30–day period, and thus their seniority rights with respect to the 484 Department had been terminated. A review of the employment records in question, however, reveals that all three of those employees were laid off from, and did not transfer out of, the 484 Department, and therefore did not relinquish their seniority rights to that department by not returning within 30 days. *See* Exhs. H, I, J, attached to Item 25; *see also* Item 36, ¶ 10. Furthermore,

the records show that Messrs. Frey, Grosso, and McLaughlin had attained craft status as "roll turners" prior to their layoffs from the 484 Department, and thus under the Craft Agreement retained their recall rights to those positions. *See id.* Plaintiff argues that there were no craft positions remaining in the 484 Department at the time of the recalls, and thus craft status is irrelevant to the court's determination of the motions before it. *See* Item 30, ¶ 11. This argument is meritorious to a degree; however, the court deems the Craft Agreement relevant to the extent that it provides for an employee's retention of recall rights to the department in which he attained craft status. The employment records do show that, in June, 1979, both Messrs. Frey and McLaughlin refused recall to non-craft positions in the 484 Department. Such a refusal was within their rights as craftsmen, notwithstanding the fact that there may not have been any craft positions remaining in the 484 Department in June, 1979. I thus find unpersuasive plaintiff's argument that, because no craft positions were available in the 484 Department, Messrs. Frey, Grosso or McLaughlin could not be recalled to that department ahead of plaintiff. The summary judgment record is clear and convincing that the challenged recalls were effectuated according to Bethlehem's reasonable interpretation of the CBA's seniority provisions, and those recalls thus do not provide a basis for finding that genuine factual issues exist with regard to whether Bethlehem breached its contractual obligations to plaintiff.

As additional grounds for his argument that material factual issues remain unresolved, plaintiff contends that Bethlehem's policy of rehiring previously severed employees upon repayment of severance benefits was arbitrarily applied to plaintiff so as to wrongfully deny him the opportunity to return to work in the 484 Department. *See* Plaintiff's Affidavit, Item 31, ¶¶ 28–30. Upon review of the record, however, the court finds nothing to indicate that the CBA, or Bethlehem's conduct pursuant to the CBA, required Bethlehem to recall plaintiff subsequent to his severance.

Bethlehem's policy in this regard is, and has been, discretionary according to its need for the skills of particular former employees (see Item 36, ¶ 5), and no factual evidence has been discovered to indicate that its decision not to rehire plaintiff (a non-craft employee) was so arbitrary as to constitute a breach of the CBA.

Moreover, the court finds that it was not unreasonable for Bethlehem to have considered plaintiff's grievance as untimely. Under Article XI of the CBA, the section setting forth the procedures for adjustment of complaints and grievances, the first step of the grievance procedure—i.e., oral discussion with the employee's foreman, must take place "within 30 calendar days after the date on which the facts or events upon which the complaint is based shall have existed or reasonably should have become known to the Employee ...". Article XI, § 1(d), attached as Exh. A to Item 1. The actual events precipitating plaintiff's grievance in the instant case occurred in January, March, and May of 1984, when Messrs. Frey, McLaughlin, and Grosso, respectively, were recalled to the 484 Department (see Exhs. H, I, J, attached to Item 25; see also Item 36, ¶ 10), and plaintiff's grievance was not presented to the company until March 19, 1986. Exh. K, attached to Item 25. In light of the employment circumstances existing at Bethlehem during the times relevant to this case, as amply set forth in the record before the court, it

certainly was not unreasonable for Bethlehem officials to have believed that plaintiff should have been aware of the hiring situation in the 484 Department in early 1984, and that he should therefore have presented his complaint at that time.

Finally, the CBA expressly provides that an employee's continuous service seniority is terminated when that employee voluntarily quits his employment or elects to take his severance. See Article X, § 2(a) and Article XVIII, §§ 3, 4 of the CBA, attached as Exh. A to Item 1. Under the circumstances existing at the time plaintiff's grievance was presented to Bethlehem officials, there were sufficient grounds for those officials to believe that plaintiff's severance from the company removed him from the seniority roster for the 484 Department. Absent any other evidence of arbitrariness, Bethlehem's rejection of plaintiff's grievance at the initial stage of the grievance procedure was thus not unreasonable and did not constitute a breach of the CBA.

■ For all of these reasons, I find the record convincing that there are no genuine issues of material fact as to whether Bethlehem breached its obligations to plaintiff under the CBA. Plaintiff has therefore failed, as a matter of law, to satisfy the first part of the standard set forth in Vaca v. Sipes, and it is unnecessary for the court to consider whether the Union breached its duty of fair representation.[6] Palancia,

---

**6.** It is important to note that, were the merits of the fair representation claim reached, the court would likewise rule in defendants' favor on their summary judgment motions. Courts have variously interpreted Vaca v. Sipes to require, with regard to whether the union breached its duty to fairly represent the plaintiff, a showing that the union's conduct toward the plaintiff was "arbitrary, discriminatory, or in bad faith," 386 U.S. at 190, 87 S.Ct. at 916, constituted "fraud, deceitful action or dishonest conduct," Hoffman v. Lonza, Inc., 658 F.2d 519, 522 (7th Cir.1981) (quoting Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America v. Lockridge, 403 U.S. 274, 299, 91 S.Ct. 1909, 1924, 29 L.Ed.2d 473 (1971)), or whether the union "arbitrarily ignore[d] or perfunctorily process[ed] a grievance." Miller v. Gateway Transportation Co., 616 F.2d 272, 277 n. 11 (7th Cir.1980) (citing Hines v. Anchor Motor Freight, 424 U.S. 554, 563, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976)). My review of the

record in the instant case reveals nothing that would indicate that the Union's conduct toward plaintiff rose to the level of a breach of duty of fair representation. Mr. LaCross presented plaintiff's grievance to Bethlehem, whereupon Bethlehem refused to process it any further due to plaintiff's voluntary severance, the established seniority of the recalled employees, and the substantial question of timeliness. It is well-settled that the duty to fairly represent a member of the bargaining unit does not encompass a duty to process a non-meritorious grievance. See Hines, 424 U.S. at 567, 96 S.Ct. at 1057; Vaca, 386 U.S. at 190–91, 87 S.Ct. at 916–17. Furthermore, once Bethlehem had rejected the grievance, the Union cannot be charged with breach of duty based on its failure to investigate Bethlehem's alleged policy regarding other recalls of previously severed employees. Finally, under the circumstances present here, Mr. Sambuchi's conduct—i.e., advising

551 F.Supp. at 554. Accordingly, defendants' motions for summary judgment are granted pursuant to Fed.R.Civ.P. 56, and plaintiff's complaint is dismissed.

So ordered.

---

plaintiff to lie about his employment status, was not the type of union misconduct encompassed by § 301. The suggestion that plaintiff misrepresent his status, while clearly not exemplary conduct on the part of a union president, did not affect plaintiff's grievance one way or the other; in fact, it actually demonstrates an attempt by the Union to find a way to help plaintiff in a situation where no legitimate recourse was available.