NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3618
_____

EDELMINO ACOSTA, JR.;
OLIVER A. MONTOYA;
HUMBERTO FIGUEROA,
                    Appellants

v.

HOVENSA LLC; THE UNITED STEELWORKERS OF AMERICA;
THE UNITED STEELWORKERS OF AMERICA LOCAL CHAPTER 8526
_____

On Appeal from the District Court
for the Virgin Islands
D.C. Civil Action No. 1-08-cv-00089
(Honorable Wilma A. Lewis)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 24, 2013

Before: MCKEE, *Chief Judge*, SCIRICA and VANASKIE, *Circuit Judges*

(Filed:  July 9, 2013)

_____

OPINION OF THE COURT
_____

SCIRICA, *Circuit Judge*.

In this action under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, plaintiffs Edelmino Acosta, Jr., Oliver A. Montoya, and Humberto Figueroa appeal the grant of summary judgment to defendants. We will affirm.

I.

Plaintiffs were employed by defendant HOVENSA, LLC, as process operators. Their terms of employment were governed by a collective bargaining agreement between HOVENSA and defendant United Steelworkers, AFL/CIO-CLC, on behalf of defendant Local Union 8526. The collective bargaining agreement classified process operators as A (the highest level), B, or C (the lowest level). The agreement specified that when a permanent vacancy occurred in a job classification other than an entry-level position, HOVENSA was to post a notice of the job opening, called a Bid Notice, for ten days. Employees in the next-lower job classification interested in promotion into the vacant position were to sign the Bid Notice within the ten-day period. HOVENSA was to fill the vacancy within thirty days of posting the Bid Notice, determining which employees to promote based on several factors, including "[c]ontinuous service in the next lower job classification." CBA § 16.2. If the other factors were "relatively equal, then length of continuous service in the next lower job classification shall govern." *Id.* Once HOVENSA filled a vacancy,

> The successful bidder will be given a training period of ninety (90) calendar days to qualify for the job. During the training period, the successful bidder will be compensated at the rate of pay that he was receiving at the time that he was selected as the successful bidder. (The successful bidder shall not receive the rate of pay of the higher position until he is certified to perform that job.) If the employee fails to demonstrate to the satisfaction of [HOVENSA] that he can handle the job, then he shall revert to his former lower classification without loss

2

of seniority in that classification. Further, if during the training period it is apparent that an employee cannot qualify for the job he shall be returned to his prior classification. An employee may also voluntarily elect to revert to his former classification without loss of seniority if he does so within thirty (30) days after being installed on the job.

*Id.* at § 16.6.

On July 24, 2006, HOVENSA posted a Bid Notice for two Process Operator B positions in the West Power/Utilities. Eleven HOVENSA employees, including Peter Williams, Jr., and Eugene Freeman, bid on the positions. On September 13, 2006, HOVENSA awarded one of the positions to Williams, and on September 26, 2006, it awarded the other position to Freeman.

Williams never worked as or was trained for the Process Operator B position in the West Power/Utilities. Instead, he stayed in the East Power/Utilities, where he was given special assignments. Williams orally asked several HOVENSA and union personnel, including Cyril Moses, the superintendent of the East Power/Utilities, when his training would begin and whether he would lose seniority because he had not yet been trained. He was told that, as long as he did not refuse the bid in writing, his seniority would stay intact. Williams testified he was not concerned about the delay in his training because "[a]fter I get certified, I'll get back pay." Moses testified Williams "came to me one time, and he told me that he won a bid for the B for the west, but he would prefer to stay in the east. And I told him, well, once he won the bid, he ha[d] to honor the bid, or could say he d[idn]'t want the bid." Moses testified Williams "never told me that he won't go to the west."

3

On March 19, 2007, plaintiffs were awarded Process Operator B bids. On March 14, 2008, HOVENSA posted a Bid Notice for five Process Operator A positions. Nine employees applied for the positions, including plaintiffs, Williams, and Freeman. The bids were awarded to Williams, Freeman, and three others. Plaintiffs were not awarded bids.

In June and July 2008, plaintiffs approached HOVENSA and union officials with concerns about the bid awards granted to Williams and Freeman. Plaintiffs contended they had more seniority than Williams and Freeman because Williams had never been certified as a Process Operator B and the Process Operator B bid Freeman had been awarded had not been properly posted under the collective bargaining agreement. The union officials told plaintiffs there was no breach of contract and no reason to file a grievance. The union did not investigate plaintiffs' contentions further nor file a grievance with HOVENSA on their behalf.

In October 2008, plaintiffs brought this hybrid action under § 301 of the Labor Management Relations Act, claiming HOVENSA had breached the collective bargaining agreement by failing to promote them and the union had breached its duty of fair representation to them by "arbitrarily fail[ing] to adequately investigate, process, present and argue [their] legitimate grievance." Defendants moved for summary judgment. The District Court granted the motions, finding no genuine issue of fact that the union had breached its duty of fair representation and, accordingly, it was unnecessary to reach the breach of contract issue. Plaintiffs appeal.

4

## II.[1]

"A 'hybrid' section 301 action is one in which a union member sues his or her employer for breaching its contractual obligations under the collective bargaining agreement and the union for breaching its duty of fair representation." *Beidleman v. Stroh Brewery Co.*, 182 F.3d 225, 236 (3d Cir. 1999). "[T]he two claims are inextricably interdependent." *United Parcel Serv., Inc. v. Mitchell*, 451 U.S. 56, 66 (1981). "'To prevail against either the company or the Union, . . . [plaintiffs] must not only show that [the company's action] was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union.'" *Id.* at 67 (quoting *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 570-71 (1976)).

"[A] union breaches its duty of fair representation if its actions are either 'arbitrary, discriminatory, or in bad faith.'" *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991) (quoting *Vaca v. Sipes*, 386 U.S. 171, 190 (1967)). "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness,' as to be irrational." *Id.* (citation omitted) (quoting *Ford Motor Co. v. Huffman*, 345 U.S.

---

[1] The District Court had jurisdiction under 29 U.S.C. § 185 and 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of summary judgment. *B.S. v. Somerset Cnty.*, 704 F.3d 250, 260 (3d Cir. 2013). "Accordingly, we view the facts in [appellants'] favor to determine whether the District Court correctly held that 'there [was] no genuine dispute as to any material fact and [that Appellees were] entitled to judgment as a matter of law.'" *Id.* (alterations in original) (quoting Fed. R. Civ. P. 56(a)).

330, 338 (1953)). "Any substantive examination of a union's performance . . . must be highly deferential . . . ." *Id.* at 78. "[A] union does not breach its duty of fair representation by rejecting an employee's interpretation of the collective bargaining agreement unless the union's interpretation is itself arbitrary or unreasonable." *Bache v. Am. Tel. & Tel.*, 840 F.2d 283, 291 (5th Cir. 1988).

"Federal substantive law governs the meaning of collective bargaining agreements." *Sheet Metal Workers Local 19 v. Keystone Heating & Air Conditioning*, 934 F.2d 35, 40 (3d Cir. 1991).

> A collective bargaining agreement is not an ordinary contract for the purchase of goods and services, nor is it governed by the same old common-law concepts, which control such private contracts. It is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate. The collective agreement covers the whole employment relationship. It calls into being a new common law – the common law of a particular industry or of a particular plant. In order to interpret such an agreement it is necessary to consider the scope of other related collective bargaining agreements, as well as the practice, usage and custom pertaining to all such agreements.

*Int'l Union, United Mine Workers of Am. v. Racho Trucking Co.*, 897 F.2d 1248, 1254 (3d Cir. 1990) (quoting *Transp.-Commc'n Emps. Union v. Union Pac. R.R.*, 385 U.S. 157, 160-61 (1966)). "'[W]here a court is called on to interpret a collective bargaining agreement it is generally appropriate for the court to look beyond the face of the collective bargaining agreement.'" *Id.* (alteration in original) (quoting *Se. Pa. Transp. Auth. (SEPTA) v. Bhd. of R.R. Signalmen*, 882 F.2d 778, 784 (3d Cir. 1989)). "To decide whether a contract is ambiguous, we do not simply determine whether, from our point of view, the language is clear." *Teamsters Indus. Emps. Welfare Fund v. Rolls-Royce Motor Cars, Inc.*, 989 F.2d 132, 135 (3d Cir. 1993). Rather, "we consider the contract language,

6

the meanings suggested by counsel, and . . . extrinsic evidence" such as "the structure of the contract, the bargaining history, and the conduct of the parties that reflects their understanding of the contract's meaning." *Id.* "[C]ollective bargaining agreements commonly include implied terms and . . . the parties' practice is important in determining if the position of one of them is even arguably justified." *Racho Trucking*, 897 F.2d at 1254.

Plaintiffs contend the collective bargaining agreement unambiguously provides that an employee's "length of continuous service in the next lower job classification," CBA § 16.2, is to be measured from the date on which the employee is certified for that classification. Plaintiffs rely on section 16.6 of the collective bargaining agreement, which provides that, once an employee wins a bid award, the employee is trained "to qualify for the job. During the training period, the [employee] will be compensated at the rate of pay that he was receiving at the time that he was selected" for the bid award. CBA § 16.6. Further, "[i]f the employee fails to demonstrate to the satisfaction of [HOVENSA] that he can handle the job, then he shall revert to his former lower classification without loss of seniority in that classification." *Id.* But, as the District Court found, the collective bargaining agreement does not define the term "continuous service," and

> the three references in section 16.6 to "revert[ing]" or "return[ing]" to the "lower," "prior," or "former" classification suggest that, upon bid award, the status of the successful bidder is converted to the higher classification. Moreover, the language of section 16.6 which states that "[i]f the employee fails to *demonstrate to the satisfaction of the Company* that he can handle the job, th[e]n he shall revert to his former lower classification without loss of seniority in that classification," suggests that a successful bidder is returned to his lower classification *only if, and after* HOVENSA affirmatively determines that the employee has failed to demonstrate that he can "handle the job."

7

*Acosta v. HOVENSA, LLC*, No. 2008-089, 2012 WL 4005546, at *8 (D.V.I. Sept. 7, 2012) (alterations in original) (quoting CBA § 16.6). Accordingly, the District Court found that "[p]laintiffs' arguments suggest, at best, that the *language* of the CBA may be ambiguous concerning how 'continuous service' is measured." *Id.*

But "interpretation of a collective bargaining agreement is more than just an analysis of its language; it requires the Court to 'look beyond the face of the collective bargaining agreement,' and consider the 'practice, usage and custom pertaining' to the terms of the CBA." *Id.* (quoting *Racho Trucking*, 897 F.2d at 1254). Defendants produced uncontroverted evidence that it was their practice to measure "continuous service" from the bid award date, not the certification date. Local Union 8526 President Gerard Jackson, who had been in union management since 1979, testified it had "always been" the case that seniority started to accrue on the date of the bid award.[2] HOVENSA's vice president of human resources testified bid award date, not certification date, was used to determine an employee's seniority in part because many factors, such as business needs or illness, could affect the certification date. As a result, "two people who may receive a bid on the same date may have different certification dates, and our past practice is that the fairest date to use is the one with the least amount of variables."

---

[2] Plaintiffs contend that in a February 2011 meeting to ratify a new collective bargaining agreement to replace the one at issue here, "Jackson admitted that seniority begins on the day an employee gets certified[,] not the bid award date." Appellants' Br. at 11. As the District Court found, this evidence was irrelevant to interpreting the agreement at issue here, which the parties entered into on March 1, 2007. *See Rolls-Royce*, 989 F.2d at 137

Plaintiffs apparently concede that it was the practice of HOVENSA and the union to determine seniority based on bid award date: "While[] there may have been a practice of counting seniority from the date of a bid award, . . . that practice was contrary to the clear wording [of] the CBA." Appellants' Br. at 21. Plaintiffs contend the practice did not apply to the specific facts at issue here, but provide no basis for their contention. *See Reynolds v. Wagner*, 128 F.3d 166, 178 (3d Cir. 1997) ("[A]n argument consisting of no more than a conclusory assertion . . . (without even a citation to the record) will be deemed waived.").[3]

Plaintiffs contend Williams refused his Process Operator B award bid, so was not an employee "in the next lower job classification" qualified for promotion to a Process Operator A position. CBA § 16.2. While Williams never trained for or worked as a Process Operator B in the West Power/Utilities, plaintiffs provided no evidence the reason was his refusal of the bid. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (holding summary judgment is proper "against a party who fails to make a showing

---

("The *past* dealings of contracting parties pursuant to an agreement are probative of the parties' intent.") (emphasis added).

[3] Plaintiffs contend the District Court should not have relied on the "self-serving testimony" that defendants produced as evidence of their practice. Appellants' Br. at 35. As plaintiffs produced no evidence contradicting that testimony, they are incorrect. "[I]n considering a motion for summary judgment the court should believe uncontradicted testimony unless it is inherently implausible even if the testimony is that of an interested witness." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 272 (3d Cir. 2007). Additionally, plaintiffs contend "Article 31 of the CBA contains a merger clause . . . which makes the agreement presumptively complete, and thus reliance on past practice is improper." Appellants' Br. at 39. Article 31 is not, in fact, a merger clause, but governs the parties' amendments or modifications of the contract. *See Battaglia v. McKendry*, 233 F.3d 720, 729 (3d Cir. 2000) ("[T]he standard merger clause causes prior negotiations and understandings to merge into and be extinguished by the subsequent agreement.").

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). The evidence established that Williams did not refuse the bid, but instead that HOVENSA delayed his training as a Process Operator B so that he could complete special assignments in the East Power/Utilities. Senior officials at HOVENSA and the union testified it was not uncommon for training of newly promoted employees to be delayed. As mentioned, HOVENSA's vice president testified that because an employee's certification date could be delayed for various reasons outside an employee's control, it was the "past practice" of the company and the union to determine seniority based on the bid award date, rather than the certification date. As Williams did not refuse his bid, his seniority accrued from his bid award date and was unaffected by the delay in his training and certification.

Plaintiffs contend Freeman was not properly promoted to a Process Operator B position in 2006 because HOVENSA did not post a Bid Notice for the position within thirty days before awarding the bid to him. *See* CBA § 16.3 ("All . . . permanent vacancies that [HOVENSA] intends to fill . . . will be filled within thirty (30) days after posting . . . ."). Instead, the Process Operator B bid that Freeman was awarded on September 26, 2006, had been posted on July 24, 2006. Plaintiffs provide no evidence that failure to strictly comply with the time deadline in § 16.3 for awarding a bid voided the award. In fact, Jackson testified HOVENSA could keep a bid open for over thirty days, though, if it did so, the union had a right to file a grievance. Furthermore, plaintiffs did not raise this issue within the time requirements of the collective bargaining agreement. *See* CBA § 24.3 (requiring the submission of employee complaints "within

10

one hundred and twenty (120) hours after the occurrence of the event about which the complaint is made."). Plaintiffs did not contest the propriety of Freeman's 2006 promotion until 2008.[4]

As it is undisputed that Williams and Freeman were awarded Process Operator B bids in September 2006 while plaintiffs were awarded such bids in March 2007, and the union had a longstanding practice of determining seniority based on bid award date, it was reasonable for the union to limit its investigation and not file a grievance about HOVENSA's promotion of Williams and Freeman to Process Operator A positions ahead of plaintiffs. Accordingly, there is no genuine issue of material fact that the union breached its duty of fair representation.

III.[5]

For the foregoing reasons, we will affirm the District Court's grant of summary judgment.

---

[4] Plaintiffs contend the District Court should have tolled the time limit for submitting a complaint because they "did not discover that Freeman had been improperly awarded the B Operator position[] until he was awarded the A Operator position ahead of them in May 2008." Appellants' Br. at 45. Plaintiffs are plainly incorrect, as tolling applies to statutes of limitations, not contractual provisions. *See Lalley v. Bethlehem Steel Corp.*, 703 F. Supp. 1047, 1050 (W.D.N.Y. 1989) ("The 30-day requirement in the CBA . . . relates not to the accrual of the cause of action for breach of the duty of fair representation but to the reasonableness of the conduct of both defendants in refusing to process plaintiff's grievance any further for the reason that it was untimely filed.").

[5] The District Court denied plaintiffs' motion to compel supplemental discovery filed almost a year after the discovery deadline, explaining the request was untimely and for documents irrelevant to plaintiffs' claims. This was not an abuse of discretion. *See Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1310 (3d Cir. 1995) ("We apply the abuse of discretion standard when reviewing orders regarding the scope and conduct of discovery.").