**KOUTSOUBOS, Spiros, Administrator of the Estate of James Koutsoubos, Appellant,**

v.

**BOEING VERTOL, DIVISION OF the BOEING COMPANY and The Boeing Company.**

**No. 84–1142.**

United States Court of Appeals, Third Circuit.

Argued Dec. 14, 1984.

Decided Feb. 27, 1985.

---

Nicholas P. Cardwell (argued), Kenneth J. McDonnell, Cardwell, Cardwell & Smoragiewicz, Hartford, Conn., for appellant.

F. Hastings Griffin, Jr., E. David Chanin, Dechert, Price & Rhoads, Philadelphia, Pa., Steven S. Bell (argued), Perkins, Coie, Stone, Olsen & Williams, Seattle, Wash., for appellees.

Before GARTH and HIGGINBOTHAM, Circuit Judges, and McCUNE, District Judge.*

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

This is an appeal from a final judgment of the district court for appellees Boeing Vertol and its parent, The Boeing Company (collectively referred to as "Boeing"), in a suit brought under the Death on the High Seas Act, 46 U.S.C. §§ 761–768 (1982), by appellant Spiros Koutsoubos, administrator of the estate of James Koutsoubos. Because we find no error of fact or law in the district court's conclusion that Boeing had made out the elements of a "government contractor" defense, we will affirm.

### I.

Decedent James Koutsoubos was one of three Navy crewmen killed during a training flight off the Florida coast on March 21, 1979, when the helicopter they were aboard hit the water and turned upside down. Appellant filed suit alleging that the helicopter, manufactured by Boeing for the Navy, was unsafe due to design defects. Boeing moved for summary judgment, contending that government contractors who supply products made to government specifications are shielded from liability to third parties.

---

* Honorable Barron P. McCune, United States District Court for the Western District of Pennsylvania, sitting by designation.

In a precise and thoughtful opinion, Judge Pollak ruled that Boeing would have to prove three elements in order to make out this affirmative defense: (1) that the government established the specifications for the helicopter; (2) that the helicopter met the government's specifications in all material respects; and (3) that the government knew as much as or more than Boeing about the hazards of the product. *Koutsoubos v. Boeing Vertol*, 553 F.Supp. 340 (E.D.Pa.1982). On the basis of the affidavits and exhibits submitted the district court granted partial summary judgment, finding that the first two elements of the defense had been established. "[T]he Navy chose the 'material' design features for this helicopter; that is, the Navy established the specifications crucial to plaintiff's allegations of defective design. Inspection by the Navy revealed that these specifications had been satisfied." 553 F.Supp. at 344 (footnotes omitted). After a subsequent evidentiary hearing, Judge Pollak found that the third element of the defense had also been established, and therefore entered final judgment for Boeing.

Prior to that hearing, appellant moved for reconsideration of the partial summary judgment, contending that the deposition testimony of two Boeing employees showed that the government had not "established" the helicopter's specifications. Though the district court agreed that some specifications originated with Boeing, it found that these proposals simply initiated a "back-and-forth" discussion between Boeing and the Navy, with the Navy making all final decisions as to the helicopter specifications. Accordingly, the motion for reconsideration was denied. Appellant contends that this denial was reversible error.

## II.

▮ It is clear that federal common law provides a defense to liabilities incurred in the performance of government contracts. *See, e.g., Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18, 60 S.Ct. 413, 84 L.Ed. 554 (1940); *Myers v. United States*, 323

F.2d 580 (9th Cir.1963); *Dolphin Gardens v. United States*, 243 F.Supp. 824 (D.Conn. 1965). This court has not previously had occasion to define the contours of such a defense. *Cf. Brown v. Caterpillar Tractor Co.*, 696 F.2d 246 (3d Cir.1982) (applying Pennsylvania law). The three-part test adopted by the district court in this case was first announced by Judge Pratt in *In re "Agent Orange" Product Liability Litigation*, 534 F.Supp. 1046 (E.D.N.Y.1982), and has since been applied in a number of products liability cases involving military contractors. *McKay v. Rockwell International Corp.*, 704 F.2d 444 (9th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 711, 79 L.Ed.2d 175 (1984); *Shaw v. Grumman Aerospace Corp.*, 593 F.Supp. 1066 (S.D. Fla.1984); *Schoenborn v. Boeing Co.*, 586 F.Supp. 711 (E.D.Pa.1984); *Hubbs v. United Technologies*, 574 F.Supp. 96 (E.D.Pa. 1983). This court, in dicta, has called Judge Pratt's formulation "attractive". *Brown v. Caterpillar Tractor Co., supra*, 696 F.2d at 254 n. 17. These cases have advanced a number of public policy justifications for the *Agent Orange* approach, among them:

1. That to hold military contractors liable for design defects could subvert the government's immunity under *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950) and *Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977) since contractors could pass the cost of accidents along to the government.

2. That holding military contractors liable would "thrust the judiciary into the making of military decisions. Although judges must decide cases arising from fields of endeavor of which they know little, their otherwise omnicompetence confronts its limits in military matters. At this point, it must be acknowledged, separation of powers becomes a proper concern." *McKay, supra*, 704 F.2d at 449.

3. That military contractors are often unable to negotiate over specifications which, due to defense requirements, in-

volve risks that would be deemed unreasonable for ordinary consumer goods.

4. That the *Agent Orange* approach encourages military contractors to work closely with military authorities in the development of equipment.

5. That the third prong of the *Agent Orange* test creates on the part of the contractor a duty to warn, so that military procurement decisions are made on the basis of readily available information.

■ We find these considerations persuasive, and believe that the three-part *Agent Orange* test applied by the district court is a workable approach to the government contractor defense in cases involving products developed specially for the military that are alleged to be defectively designed. We need not decide at this time what form the government contractor defense might take in other circumstances. *See also In re All Maine Asbestos Litigation*, 575 F.Supp. 1375 (D.Me.1983); *Johnston v. United States*, 568 F.Supp. 351 (D.Kan.1983).

■ In approving the *Agent Orange* approach, we are immediately confronted with a recurring problem of interpretation: the meaning of the requirement that the government "establish" the specifications. In *Agent Orange* Judge Pratt rejected the contention that "any role by a defendant in preparation of the specifications" should defeat the defense, but he also noted that "[i]f it should appear that the contract set forth merely a 'performance specification', as opposed to a specified product, then the government contract defense would be far more restricted than as described here." 534 F.Supp. at 1056. The logic of this middle position is clear—if *any* involvement by the contractor would defeat the defense, there would be no incentive for contractors to work closely with the military; on the other hand, where there is no government participation in the preparation of specifications the rationales for the defense do not apply.

In *McKay, supra,* the Ninth Circuit rephrased the *Agent Orange* test to reflect these considerations. Under their formulation, the defense can be made out where the government established *or approved* the specifications. 704 F.2d at 451. This is the standard the district court applied in denying appellant's motion for reconsideration. Appellant argues that if a contractor may avail itself of the *Agent Orange* defense merely by securing the government's approval of specifications, without the government exercising some "compulsion" or "control", then the rationales for the defense are circumvented, just as where the government plays no role at all.

We do not, however, believe that this is the situation envisaged by the "approval" standard applied in *McKay* and the instant case. In *McKay* the court remanded for trial on the question of whether the government "approved" the specifications "by examining and agreeing to a detailed description of the workings of the system," 704 F.2d at 453. Here the district court found a "continuous back-and-forth" between Boeing and the Navy, "with the Navy always, expectedly and properly, having the responsibility for and exercising responsibility for making final decisions as to specifications." After reviewing the record, we are convinced that there was sufficient government participation to bring this case within the *Agent Orange* rule.

We have also considered appellant's contention, first raised at oral argument, that even under the district court's "approval" standard issues of material fact remain to be tried, and find it to be without merit.

## CONCLUSION

For the foregoing reasons the judgment of the district court will be affirmed.