Edward J. MAGUIRE, III, Appellant,

v.

HUGHES AIRCRAFT CORPORATION, Allison Gas Turbine Company Division of General Motors Corporation, MPB Corporation, John Doe, Inc. (a Fictitious Name for a Corporation), Richard Roe Associates (a Fictitious Name for an Entity Other Than a Corporation), and XYZ, Inc. or ABC Associates (Fictitious Names for the Manufacturer of the Engine and/or Power Plant Components of a Certain Hughes Aircraft Corporation OH-6A Army Scout Single Engine Helicopter), Jointly, Severally or in the Alternative.

ALLISON GAS TURBINE DIVISION OF GENERAL MOTORS CORPORATION, Defendant/Third Party Plaintiff,

v.

MPB CORPORATION, Third Party Defendant.

No. 89-5970.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) July 10, 1990.

Decided Aug. 23, 1990.

Rehearing and Rehearing In Banc Denied Oct. 5, 1990.

Saul J. Steinberg, Steinberg and Gins-berg, Voorhees, N.J., for appellant.

Anthony J. Andolino, Gallo, Geffner, Fenster, Turitz & Harraka, Hackensack, N.J., for MPB Corp.

Raymond J. Tierney, Jr., Theodore S. Smith, Shanley & Fisher, P.C., Morristown, N.J., for Allison Gas Turbine Div. of General Motors Corp.

Before HUTCHINSON and NYGAARD, Circuit Judges, and VANARTSDALEN, District Judge*.

OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

In this appeal, we must decide whether the district court correctly granted summary judgment in favor of a military contractor and its subcontractor under the government contractor defense that the Supreme Court reformulated in *Boyle v. United Technologies Corp.*, 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988). Finding no error, we will affirm.

I.

On the night of August 14, 1984, appellant Edward J. Maguire, III (Maguire), was forced to crash land the helicopter he was piloting while on duty for the New Jersey Army National Guard. Doctors who examined Maguire on the night of the crash and the next day concluded that the only injuries he suffered were minor bruises to his back. Two days following the crash, an Army flight surgeon certified that Maguire was able to return to active flight status. On August 18, 1984, four days after the crash landing, Maguire lost consciousness while driving his motorcycle and collided with a curb, sustaining serious injuries.

In August of 1987, Maguire brought suit in the Law Division of the Superior Court of New Jersey, Monmouth County, against Hughes Aircraft Corporation (Hughes), the manufacturer of the helicopter, and Allison Gas Turbine Division of General Motors Corporation (Allison), the manufacturer of the helicopter's engine. In his complaint, Maguire alleged that his motorcycle crash was a result of injuries he sustained in the helicopter crash and that Hughes and Allison were responsible for the injuries sustained in both incidents.

In November of 1987, Allison removed the suit to the United States District Court for the District of New Jersey pursuant to 28 U.S.C.A. § 1441 (West 1973 & Supp.

---

* Hon. Donald W. VanArtsdalen, Senior District Judge of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

1990). The district court had subject matter jurisdiction pursuant to 28 U.S.C.A. § 1332 (West 1966 & Supp.1990) because Maguire did not share the same citizenship as either of the defendants and the dollar figure in controversy exceeded the then-applicable amount of $10,000, exclusive of interest and costs.

On October 5, 1988, Hughes, which had become the McDonnell Douglas Helicopter Company (McDonnell Douglas), moved for summary judgment. The district court granted the motion in favor of McDonnell Douglas on November 23, 1988. Maguire has not appealed from this order.

In February of 1989, based upon the report of one of Maguire's experts who concluded that a defectively designed engine ball bearing caused Maguire's helicopter to crash, Allison filed a third party complaint against MPB Corporation (MPB), the designer and manufacturer of the ball bearing. In April of 1989, Maguire moved to add MPB as a direct defendant. This motion was later granted, and Maguire filed an amended complaint.

In May of 1989, Allison filed a motion for summary judgment based upon the government contractor defense that the Supreme Court announced in *Boyle*. Shortly thereafter, MPB filed its own motion for summary judgment also based upon the same defense.

In a reported opinion, *see Maguire v. Hughes Aircraft Corp.*, 725 F.Supp. 821 (D.N.J.1989), the district court held that the government contractor defense precluded Maguire's suit against Allison and MPB. As a result, on November 8, 1989, the district court entered an order granting summary judgment in favor of both defendants. Maguire filed a timely notice of appeal to this Court on December 5, 1989.

### II.

■ We have appellate jurisdiction over the final order of the district court pursuant to 28 U.S.C.A. § 1291 (West Supp. 1990). Since this appeal is taken from a grant of summary judgment, our scope of review is plenary. *See International Union, UMWA v. Racho Trucking Co.*, 897 F.2d 1248, 1252 (3d Cir.1990). We apply the test provided in Federal Rule of Civil Procedure 56(c): (1) is there no genuine issue of material fact and (2) is one party entitled to judgment as a matter of law?

### III.

Prior to the Supreme Court's opinion in *Boyle*, this Court looked to state law in diversity actions to decide whether it was appropriate to apply the government contractor defense in favor of a military contractor. For example, in *Brown v. Caterpillar Tractor Co.*, 696 F.2d 246 (3d Cir. 1982), we had to decide whether the government contractor defense barred an injured Army reservist from recovering for injuries that allegedly resulted from an improperly designed tractor-bulldozer that Caterpillar had built for the Army. As an initial matter, we held that state law, not federal law, governed the existence and application of the government contractor defense. *See id.* at 247–49.

Later, in a suit brought under the Death on the High Seas Act, 46 U.S.C.A.App. §§ 761–768 (West 1975 & Supp.1990), where the district court exercised admiralty jurisdiction, we evaluated the government contractor defense as a matter of federal law. *See Koutsoubos v. Boeing Vertol*, 755 F.2d 352 (3d Cir.), *cert. denied*, 474 U.S. 821, 106 S.Ct. 72, 88 L.Ed.2d 59 (1985).

Shortly after our decision in *Koutsoubos*, however, we reaffirmed our holding in *Brown* that the existence and application of the government contractor defense would be determined under state law in diversity actions. *See In re Air Crash Disaster at Mannheim Germany*, 769 F.2d 115, 120 & n. 7 (3d Cir.1985), *cert. denied*, 474 U.S. 1082, 106 S.Ct. 851, 88 L.Ed.2d 891 (1986). That case, like the appeal now before us, resulted from the crash of a military helicopter.

The Supreme Court's decision in *Boyle* requires us to reexamine our application of the government contractor defense. In *Boyle*, the Supreme Court held that before resort is made to state law in a diversity

case that involves the application of the government contractor defense to a military contractor, it is necessary to determine whether state tort law is in significant conflict with the federal interests associated with federal procurement contracts. *See* 487 U.S. at 507–09, 108 S.Ct. at 2515–16. If such a significant conflict is found to exist, state tort law is pre-empted and the government contractor defense as defined by federal law will apply. *See id.* at 512, 108 S.Ct. at 2518.

The Supreme Court in *Boyle* announced a three-pronged approach for identifying when displacement of state tort law is proper in a suit against a military contractor:

> Liability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.

*Id.*

The Supreme Court in large measure based the identification of a government contractor defense at federal common law upon the contours of the discretionary function exception to liability under the Federal Tort Claims Act (FTCA), 28 U.S.C.A. § 2680(a) (West 1965). *See* 487 U.S. at 511, 108 S.Ct. at 2517. It explained that the first two prongs "assure that the suit is within the area where the policy of the 'discretionary function' would be frustrated." *Id.* at 512, 108 S.Ct. at 2518. The Supreme Court adopted the third and final prong "lest our effort to protect discretionary functions perversely impede them by cutting off information highly relevant to the discretionary decision." *Id.* at 512–13, 108 S.Ct. at 2518.

## IV.

■ The district court examined all three prongs of the government contractor defense as set forth in *Boyle* and found that both Allison and MPB were entitled to summary judgment. On appeal, Maguire maintains that the district court erred in granting summary judgment because genuine issues of material fact remain in dispute concerning the first and third prongs of the *Boyle* test.[1]

### A.

Maguire's first contention is that genuine issues of material fact remain concerning the level of government participation in connection with the alleged defect that caused Maguire's helicopter to crash. In order to satisfy the first prong of the *Boyle* test on a motion for summary judgment, Allison and MPB had to show that there existed no genuine issue of material fact concerning their assertion that the United States approved reasonably precise specifications.

We have carefully canvassed the record in a light most favorable to Maguire, the non-moving party, and we conclude that the district court was correct in holding that Allison and MPB met the test for summary judgment on the first prong of the *Boyle* test.

The record on summary judgment shows that the helicopter Maguire piloted on the night of his crash was powered by a model T63 engine that Allison manufactured. The origin of the engine can be traced to the late 1950's, when the Army sought a highly maneuverable and reliable lightweight observation helicopter with a gas turbine engine to replace its aging fleet of piston engine helicopters. Because the Army could not find a suitable gas turbine engine at that time, it asked its Light Observation Helicopter Program to design and develop the engine it desired. Soon after, the Army transferred a large part of

---

1. While Maguire argued before the district court that Allison and MPB failed to meet the second prong of the *Boyle* test, on appeal Maguire has not raised any arguments concerning the sec-

ond *Boyle* prong. We therefore assume that Maguire has abandoned his effort to show that the equipment at issue here did not conform to the applicable specifications.

the responsibility for development and testing of the engine to the Air Force.

The military submitted to government contractors from whom it sought bids a document known as Military Specification (Military Spec) E–8593. The Military Spec contained detailed design and performance specifications for the gas turbine helicopter engine that the military desired. *See* Appellees' Appendix (App.) at 183–205. Allison submitted a bid and was awarded the contract.

During the construction of the original T63 engine, Allison worked closely with Air Force officials. The Air Force's senior project engineer reviewed and approved every element of the proposed design and every proposed design change. *See id.* at 101–06. Once the design was complete, the military subjected the original T63 engine to stringent qualification testing.

After the engine passed the qualification tests, the Air Force's senior project engineer gave a detailed presentation of the T63's design to the Air Force Engine Review Board (Board). In 1965, the Board approved the original T63 design. Soon after, the military transferred responsibility for the T63 engine from the Air Force to the Army Aviation Systems Command.

The design development of the T63 engine continued under the Army's control pursuant to its Component Improvement Program. As part of this program, both the Army and Allison were expected to propose improvements to the T63 engine as a result of their collective military and commercial experience with the engine.

In 1970, pursuant to the Component Improvement Program, Allison proposed incorporating into the T63 engine bearing number 6876008, the ball bearing that Maguire alleges was the cause of his injuries. The record shows that whenever the Army or Allison proposed a change in the T63 engine, it was documented in an Engineering Change Proposal. *See id.* at 43. Allison would then submit to the Army its change proposal together with an Advanced Engineering Memorandum, specifying in precise detail the proposed change. *See, e.g., id.* at 375–98, 400–03 (copies of Allison's change proposal and engineering memorandum for ball bearing number 6876008). The Army Aviation Systems Command's Configuration Control Board would receive the proposal and distribute it among its departments for consideration of the engineering, material requirements, technical publications, maintenance, depot overhaul and financial impact of the proposal.

Once these departments reported back on the various impacts of the proposed change, the Configuration Control Board would convene a meeting of the interested departments to consider their sometimes competing interests. After completing the entire internal evaluation, the Army approved the proposed bearing change. *Id.* at 47. It then amended Allison's contract, and Allison revised its specifications and drawings to incorporate the bearing into the design. *See id.* at 47–48, 417. After the Army approved the bearing, Allison proceeded to purchase the approved bearing from MPB. MPB strictly adhered to the model specifications in manufacturing the bearing. *See id.* at 74.

This evidence about the design modification that resulted in the inclusion of ball bearing number 6876008 in the T63 engine shows that the government approved reasonably precise specifications. It stands unrebutted. Nevertheless, Maguire claims on appeal that the Army's approval of the ball bearing amounted to no more than a "rubber stamp."

In advancing his "rubber stamp" argument, Maguire relies upon *Trevino v. General Dynamics Corp.*, 865 F.2d 1474 (5th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 327, 107 L.Ed.2d 317 (1989). In *Trevino,* the Fifth Circuit held that the government contractor defense did not apply, and thus state tort law was not pre-empted, because the Navy left the design of the submarine diving chamber there at issue entirely in General Dynamics' control. *See id.* at 1486.

In *In re Air Crash Disaster,* 769 F.2d at 122, before the Supreme Court's decision in *Boyle,* we wrote that "the government contractor defense is available to a contractor

that participates in the design of the product, so long as the government's approval consists of more than a mere rubber stamp." If the reasoning of *Trevino* is correct, the "rubber stamp" exception has survived the Supreme Court's decision in *Boyle.*

The rationale behind the "rubber stamp" exception to the government contractor defense is twofold. First, the Supreme Court in *Boyle* grounded the government contractor defense within the parameters of the FTCA's discretionary function exemption. It is clear that where the government rubber stamps a design that a contractor has proposed, government officials have not performed a discretionary function.[2] Second, the Supreme Court in *Boyle* held that the government contractor defense preempts state tort law when "the state-imposed duty of care that is the asserted basis of the contractor's liability ... is precisely contrary to the duty imposed by the Government contract." *Boyle,* 487 U.S. at 509, 108 S.Ct. at 2516. Thus, the rubber stamp exception ensures that state tort law is not pre-empted absent an actual policy judgment by federal officials.

Here, the district court was correct in holding that Maguire failed to point to any genuine issue of material fact that suggested the Army had rubber stamped Allison's proposed change in the T63 engine. Instead, Allison and MPB identified in the record undisputed evidence showing that the Army's approval of this type of design change was measured and clearly discretionary. Further, the Army's approved design required Allison to include in the T63 engine the particular ball bearing that Maguire says is to blame for his injuries. Thus, the federal contract is in direct conflict with the state tort law duty that Maguire identifies. Since there was no "rubber stamp" involved, the district court correctly held that the Army approved reason-

ably precise specifications and that Allison and MPB therefore qualified for the government contractor defense under the first prong of the *Boyle* test.

### B.

■ We now turn to Maguire's argument that Allison and MPB failed to rule out any genuine issue of material fact about whether they warned the United States of dangers in the use of the equipment that were known to them but not to the United States.

The record contains unrebutted deposition testimony that Allison disclosed to the Army the known safety risks regarding the proposed bearing. *See* App. at 54, 57, 74. Furthermore, the record contains unrebutted evidence that Allison informed the Army, in its engineering memorandum, that the proposed bearing had a "B-10" life of 1870 hours, meaning that ten percent of the proposed new bearings would fail within the first 1870 hours of operation. *See id.* at 56, 400.

In accordance with the usual standards for summary judgment, once Allison and MPB established their entitlement to judgment under the third prong of the government contractor defense, Maguire, as the party with the ultimate burden of proof, could not rely upon mere allegations against the proof that Allison and MPB had disclosed the ball bearing's known safety risks to the Army. *See International Union, UMWA v. Racho Trucking Co.,* 897 F.2d 1248, 1254 (3d Cir.1990) (when moving party has established its entitlement to summary judgment, opposing party may not rest on mere allegations but must set forth specific facts showing that a genuine issue of material fact exists).

Maguire failed to show that a genuine issue of material fact existed concerning

---

**2.** By definition, the "rubber stamp" exception to the government contractor defense applies only where the contractor proposes a design to the government. However, the mere fact that a design proposal originates with the government contractor is not enough to make the defense inapplicable. In *Boyle,* the Supreme Court explicitly rejected such a course, writing:

The design ultimately selected may well reflect a significant policy judgment by Government officials whether or not the contractor rather than those officials developed the design.

487 U.S. at 513, 108 S.Ct. at 2518.

the third prong of the *Boyle* test. Thus, the district court correctly held that Allison and MPB were entitled to summary judgment.

## V.

We have carefully examined each of Maguire's assignments of error and find that all lack merit. We will therefore affirm the order of the district court granting summary judgment in favor of Allison and MPB pursuant to the government contractor defense that the Supreme Court announced in *Boyle*.