# INTERNATIONAL UNION, UNITED MINE WORKERS OF AMERICA

v.

# RACHO TRUCKING COMPANY.

### Appeal of GEORGE RACHO TRUCKING COMPANY.

#### No. 89–5449.

United States Court of Appeals, Third Circuit.

Argued Oct. 26, 1989.

Decided March 9, 1990.

Andrew J. Primerano (argued), Bart E. Ecker, Laputka, Bayless, Ecker & Cohn, P.C., Hazleton, Pa., for appellant.

Jonathan Walters (argued), Kirschner, Walters & Willig, Philadelphia, Pa., and Robert H. Stropp, Jr., Michael Dinnerstein, United Mine Workers of America, Washington, D.C., for appellee.

Before HUTCHINSON and NYGAARD, Circuit Judges, and DuBOIS, District Judge.*

OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

I.

Appellant George Racho Trucking Company (Racho Trucking) appeals an order of the United States District Court for the Middle District of Pennsylvania. The order denied its motion for summary judgment and granted the International Union of United Mine Workers of America's (UMWA's or Union's) cross-motion for summary judgment in the UMWA's three consolidated actions to enforce, as binding labor arbitration awards, three decisions of the Anthracite Board of Conciliation (the Conciliation Board or the Board). The Board had upheld the UMWA's position in three grievances filed against Racho Trucking.

Racho Trucking is an employer signatory to the 1985 version of the collective bargaining agreement that governs relations between anthracite-producing companies and UMWA-represented workers in the anthracite industry. The Conciliation Board is an entity the companies and the Union first created in 1903 to help settle grievances arising under the collective bargaining agreement reached in that year. The 1903 collective bargaining agreement was the first collective bargaining agreement between the anthracite-producing companies of northeastern Pennsylvania and the UMWA.

From 1903 until 1975, the language of successive collective bargaining agreements between the anthracite producers and the UMWA plainly gave the Conciliation Board the power that a compulsory labor arbitrator has to settle disputes over the interpretation and application of a collective bargaining agreement. In 1975, the language changed. The changes were carried over into the 1985 agreement that controls this case.

Racho Trucking contends that the language changes converted the Conciliation Board from an arbiter to a mediator. On cross-motions for summary judgment, the district court disagreed with Racho Trucking, construed the new language as effecting no essential change in the Conciliation Board's power and granted the UMWA's request for enforcement of the Conciliation Board's three decisions against Racho Trucking.

In the face of the 1985 agreement's language, we conclude the district court could not properly rule, as a matter of law, that the 1985 agreement continued the pre–1975 power of the Conciliation Board to act as

* Hon. Jan E. DuBois, District Judge of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

the final arbiter of grievances. Instead, we think that the 1985 agreement's changed language with respect to the Conciliation Board's power requires factual interpretation of what the parties intended the textual changes to mean. Therefore, the district court erred in granting summary judgment in favor of the UMWA.

In support of its motion for summary judgment, Racho Trucking introduced material evidence to bolster its contention that only an umpire, and not the Conciliation Board, can act as the final arbiter of grievances under the 1985 collective bargaining contract. Federal Rule of Civil Procedure 56, governing practice on motions for summary judgment, does not permit a non-moving party to rest on its allegations in the face of a moving party's evidence that would, if unrefuted, entitle the moving party to judgment. Instead, the non-moving party must produce countervailing evidence sufficient to create a genuine issue of material fact. Racho Trucking's production of the texts of earlier agreements in support of its interpretation of the collective bargaining contract's grievance provisions would entitle it to summary judgment if otherwise unrefuted. The UMWA failed to produce countervailing evidence sufficient to create a genuine issue of material fact supporting its interpretation of the collective bargaining contract's grievance and arbitration provisions. Therefore, Racho Trucking was entitled to summary judgment.

Accordingly, we will reverse the district court's order granting summary judgment to the Union and remand these consolidated cases with instructions to enter an order granting summary judgment in favor of Racho Trucking so that these disputes can proceed to hearing before an umpire.

## II.

The 1985 agreement contains a four step grievance procedure. It states:

Disputes arising under this Agreement shall be resolved as follows:

(1) The Miner will make his complaint to his immediate foreman. *The foreman will have the authority to settle the matter* and will notify the Miner of his decision within 24 hours.

(2) *If no agreement is reached at Step 1,* the complaint shall be taken up within five work days of the foreman's decision at a meeting attended by the Mine Committee, a representative of the UMWA District, and a representative of the Employer. At such meeting, the positions of the Miner, the Mine Committee and the Employer will be set forth in a written statement. The Miner will state and sign the grievance; a representative of the Mine Committee will state and sign the Mine Committee's position; and the representative of the Employer will state and sign the Employer's position.

(3) *If no agreement is reached at Step 2, the written statement shall be referred to the Anthracite Board of Conciliation,* consisting of two representatives to be designated by the UMWA District and two representatives to be designated by the Employers signatory to this Agreement. *The Board shall take up the complaint within seven work days after the matter is referred to it.*

(4) *If no agreement is reached at Step 3, the matter shall be referred to the umpire.* Either the Union or the Employer may request that the umpire hear testimony and receive evidence in person, and where such a request is made, the umpire shall promptly conduct a hearing for that purpose. *Where neither the Union nor the Employer requests a personal hearing before the umpire, a hearing shall be held before the Anthracite Board of Conciliation, the record of which shall be transmitted to the umpire according to past practice.* Where no personal hearing before the umpire is requested, the umpire may conduct a supplementary hearing or investigation if necessary, in his judgment, to reach a fair decision. *The umpire's decision shall be final and shall govern only the dispute before him.*

Anthracite Wage Agreement of 1985, Article 18, § (b), App. at A–54–55 (emphasis added).

Article 18, section (g) of the 1985 collective bargaining agreement is also material. It is entitled "Finality of Decision or Settlement" and states:

> Settlements reached at any step of the grievance procedure shall be final and binding on both parties and shall not be subject to further proceedings under this Article except by written mutual agreement. Settlements reached at Steps 2 and 3 shall be in writing and signed by appropriate representatives of the Union and the Employer.

Id., Article 18, § (g), App. at A–55 (emphasis added).

As noted above, the Anthracite Wage Agreement of 1985 is one in a line of collective bargaining contracts dating back to 1903. The 1903 contract, entitled "Awards of Commission, 1903," had grievance provisions whose language differed from those in the 1985 text. The 1903 contract's grievance provisions were set forth in Section IV of that agreement. Section IV stated, in relevant part:

> [A]ny difficulty or disagreement arising under this award, either as to its interpretation or application, or in any way growing out of the relations of the employers and employed, which cannot be settled or adjusted by consultation between the superintendent or manager of the mine or mines, and the miner or miners directly interested, or is of a scope too large to be so settled or adjusted, shall be referred to a permanent joint committee, to be called a Board of Conciliation, to consist of six persons....

> The Board of Conciliation thus constituted, shall take up and consider any question referred to it as aforesaid, hearing both parties to the controversy, and such evidence as may be laid before it by either party; and any award made by a majority of such Board of Conciliation shall be final and binding on all parties. If, however, the said Board is unable to decide any question submitted, or point related thereto, that question or point shall be referred to an umpire, to be appointed, at the request of said Board, by one of the circuit judges of the third judicial circuit of the United States, whose decision shall be final and binding in the premises.

Awards of Commission, 1903, § IV, App. at A–106–07 (emphasis added).

Racho Trucking's principal office is in the City of Hazleton, Luzerne County, Pennsylvania. Luzerne is one of six northeastern Pennsylvania counties that contain and produce practically all the anthracite, or hard coal, in the world. Along with other companies in the anthracite industry, Racho Trucking has been going through a period of economic hardship and contraction. This has resulted in the lay-off of a number of its employees.

Proceeding under the 1985 agreement, three members of the UMWA who were laid off by Racho Trucking filed separate grievances against the company. Each employee said that Racho Trucking laid him off in favor of an employee with less seniority and then used the junior employee to fill a job the grievant was qualified for and entitled to fill under the collective bargaining agreement's seniority provisions. The grievance procedures provided for in steps 1 and 2 of the 1985 agreement failed to settle the disputes between the UMWA and Racho Trucking.

In the first of the three grievances to reach the Conciliation Board, Racho Trucking appeared in opposition to the grievant. Nevertheless, the Board found the first grievant was entitled to relief. Racho Trucking asked the Board to appoint an umpire. The Board did so, but the parties were unable to agree with him on a date for a hearing. In the meantime, the other two grievances reached the Board. Racho Trucking refused to appear before the Board to oppose them because the Board had failed to hear the grievances within the seven work days provided for in the collective bargaining agreement. In Racho Trucking's absence, the Board found those two grievants were entitled to relief. Racho Trucking also refused to accept these decisions. Instead, it gave notice of its disagreement and again asked for the appointment of an umpire to hear and decide these two disputes, as well as the first,

pursuant to its interpretation of step 4 of the bargaining agreement's grievance procedure.

The UMWA refused to continue at step 4 in any of the three disputes and filed these three actions in the district court for enforcement of the Board's decisions, claiming that they were final and binding arbitration awards.[1] Racho Trucking asserted in defense that the UMWA had failed to exhaust the dispute resolution procedures contained in the bargaining contract when the Union refused to cooperate in the appointment of an umpire under step 4. After the parties filed cross-motions for summary judgment, the district court rejected Racho Trucking's argument, granted the Union's cross-motion for summary judgment and ordered enforcement of the Board's decisions. App. at A–153.

### III.

The district court had subject matter jurisdiction over the UMWA's three actions pursuant to 29 U.S.C.A. § 185(a) (West 1978) and 28 U.S.C.A. § 1331 (West Supp. 1989). It properly consolidated these suits because they presented common issues of fact or law. *See* Fed.R.Civ.P. 42(a). We have appellate jurisdiction over the district court's grant of summary judgment in favor of the UMWA and denial of summary judgment in favor of Racho Trucking pursuant to 28 U.S.C.A. § 1291 (West Supp. 1989).[2] Because the district court resolved these consolidated cases upon cross-motions for summary judgment, our scope of review is plenary. We apply the test pro-

vided in Federal Rule of Civil Procedure 56(c): (1) is there no genuine issue of material fact and (2) is one party entitled to judgment as a matter of law? In addition, because the question of whether the terms of the collective bargaining contract are ambiguous is an issue of law, our review of that issue is also plenary. *See Washington Hosp. v. White*, 889 F.2d 1294, 1299 (3d Cir.1989); *Thermice Corp. v. Vistron Corp.*, 832 F.2d 248, 252 (3d Cir.1987).

### IV.

We first consider the propriety of the district court's order granting the Union's motion for summary judgment. The Union says that step 3 of the grievance procedure, read in conjunction with the use of the term "settlement" in Article 18, section (g), must be construed to make decisions of the Conciliation Board final and binding upon the Union, the grievant and the employer. In advancing this argument it says the term "settlement" in section (g) is used synonymously with the word "agreement," which in step 4, the Union says, means agreement among the members of the Board.[3] This construction is at least arguably counter to the implication of section (g)'s additional requirement that appropriate representatives of the Union and the employer must sign any "settlement" reached at step 3 before it becomes binding.[4] The UMWA maintains that the Board members themselves are agents of the Union and the employer authorized to sign an agreement reached on their behalf

1. The three actions were docketed in the district court as Civil Action Nos. 88–245, 88–448 and 88–1690.

2. Since the grant of summary judgment in favor of the UMWA was a final order, 28 U.S.C.A. § 1291 gives us appellate jurisdiction over the entire case. Thus, our power of review extends not only to that portion of the district court's order granting summary judgment in favor of the UMWA, but also to that portion of its order denying Racho Trucking's cross-motion for summary judgment. *See, e.g., Pennsylvania Power Co. v. Local Union # 272*, 886 F.2d 46 (3d Cir.1989).

3. The UMWA argues that the term "agreement," as used in steps 2 through 4, means an agreement reached by the entity or parties expressly

mentioned in the previous step. Thus, under the UMWA's construction, the "agreement" spoken of in step 2 means an agreement between the miner and his immediate foreman; the "agreement" spoken of at step 3 means an agreement among the miner, the Mine Committee and the employer; and the "agreement" spoken of at step 4 means the decision of the Anthracite Board of Conciliation.

4. This alone would seem to make the collective bargaining agreement ambiguous on this point. *See Washington Hospital*, 889 F.2d at 1301 ("[t]o be unambiguous, an agreement must be reasonably capable of only one construction").

at step 3, and that this delegation of authority transforms the Board's decision into a final and binding settlement. Under the Union's construction, the grievance is referred to an umpire for a binding decision only if the Board cannot agree on its resolution. Otherwise, the Board, not the umpire, makes the final decision.

Racho Trucking contends that only the umpire provided for in step 4 can impose a binding decision upon the parties. Of course, it says, the parties remain free to settle their dispute at any of the first three steps, because the goal at those levels is an amicable resolution that both sides can voluntarily accept. According to Racho Trucking, this construction gives the term "agreement" a single meaning as it is used throughout Article 18.[5] In support of its construction, Racho Trucking points out that not until step 4 does the text expressly provide for a mandatory end to the grievance procedure. As Racho Trucking sees it, if Article 18's formalities are followed, a "settlement" under section (g) of Article 18 is the equivalent of an agreement at steps 1 through 3, and section (g) simply gives that settlement the same binding effect as the text of step 4 gives the umpire's final decision at that stage.

Racho Trucking's construction gains support from the texts of the earlier bargaining agreements. It offered these texts to the district court in support of its cross-motion for summary judgment. Racho Trucking's evidence shows significant changes in the text of the collective bargaining contract's grievance section as it evolved from 1903 to 1985. In the early contracts, the 1903 language that made decisions of the Board "final and binding on all parties" was retained. *See* Agreement of May 26, 1939, § (2), App. at A–110. Use of an umpire remained an option when the "Board is unable to decide any question submitted, or point related thereto." *Id.*

However, in the Anthracite Wage Agreement of 1975, the phrase "final and binding on all parties" was dropped from what is now step 3. *See* Anthracite Wage Agreement of 1975, Article 18, § (b)(3), App. at A–123. It was not thereafter replaced, and it remains absent from the Anthracite Wage Agreement of 1985. Instead, the 1975 and 1985 collective bargaining contracts refer only to "agreements" reached at the first three steps of the grievance process. The 1975 and 1985 collective bargaining contracts define the cases that can be heard by an umpire as those in which step 3 did not result in an "agreement," instead of those in which the "Board is unable to decide [the] question submitted."

From the language of the 1985 collective bargaining contract itself as well as the evidence Racho Trucking offered on its textual evolution, we are satisfied that the district court erred in construing the 1985 contract in favor of the Union as a matter of law and thus granting the Union's motion for summary judgment. At best, the language of the 1985 contract is ambiguous on the final and binding effect of the Board's decisions. Thus, determination of the intended meaning of the 1985 text requires factual interpretation.

V.

We are thus left with the question of whether the Union's failure to produce any evidence beyond the 1985 contract's text entitled Racho Trucking to summary judgment because there was no genuine issue of material fact sufficient to refute its interpretation of the 1985 contract as depriving the Board's decisions of binding effect. If so, the district court erred in denying Racho Trucking's cross-motion for summary judgment. We have already rejected Racho Trucking's argument that the text of the collective bargaining contract's grievance procedure, read in light of the changes that the parties have made over the years in successive contracts, unambiguously denies the Conciliation Board the power to make binding decisions in the absence of agreement by the parties to the dispute. *See* note 4, *supra*. As stated above in the text, the Union's contention that the term "agreement" in step 4 refers

---

**5.** Under Racho Trucking's construction, the term "agreement" as used in steps 2 through 4 consistently means an agreement between the parties to the dispute.

to "agreement" among the members of the Board is not wholly implausible on the contract's face, and we are reluctant to construe definitively this collective bargaining contract in the fashion that Racho Trucking suggests on the somewhat sparse record before us.

The Supreme Court has taught us:

A collective bargaining agreement is not an ordinary contract for the purchase of goods and services, nor is it governed by the same old common-law concepts, which control such private contracts. It is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate. The collective agreement covers the whole employment relationship. It calls into being a new common law—the common law of a particular industry or of a particular plant. In order to interpret such an agreement it is necessary to consider the scope of other related collective bargaining agreements, as well as the practice, usage and custom pertaining to all such agreements.

*Transportation–Communication Employees Union v. Union Pac. R.R.*, 385 U.S. 157, 160–61, 87 S.Ct. 369, 371, 17 L.Ed.2d 264 (1966) (citations and internal quotations omitted).

More recently, in *Consolidated Rail Corp. (Conrail) v. Railway Labor Executives' Ass'n*, —— U.S. ——, 109 S.Ct. 2477, 105 L.Ed.2d 250 (1989), the Supreme Court recognized that collective bargaining agreements commonly include implied terms and that the parties' practice is important in determining if the position of one of them is even arguably justified. *See id.* 109 S.Ct. at 2485. While *Conrail* arose under the Railway Labor Act, we see no reason why, in this respect, it should not have equal force under the National Labor Relations Act, the statute that governs relations between the parties here. Indeed, in *Southeastern Pa. Transp. Auth. (SEPTA) v. Brotherhood of R.R. Signalmen*, 882 F.2d 778 (3d Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 840, 107 L.Ed.2d 835 (1990), we cited with approval decisions from the Fourth, Fifth and Sixth Circuits for the proposition that it is often appropri-

ate to look to parol evidence in the context of collective bargaining agreements. *Id.* at 784–85. In that case we said: "[W]here a court is called on to interpret a collective bargaining agreement it is generally appropriate for the court to look beyond the face of the collective bargaining agreement." *Id.* at 784.

With these cautionary principles about the construction of collective bargaining contracts in mind, we do not believe it would be proper to construe the agreement as a matter of law as Racho Trucking suggests. Indeed, it is unnecessary to do so in resolving this dispute. Instead, we hold that Racho Trucking's unanswered evidence of the grievance procedure's textual evolution entitled it to summary judgment under Federal Rule of Civil Procedure 56(c) because the Union failed to produce any evidence that would create a genuine issue of material fact. The significant textual changes between the pre–1975 agreements and the one before us sufficiently explains the ambiguity in the grievance procedure's use of the terms "settlement" and "agreement" to require the UMWA, as the party opposing Racho Trucking's cross-motion, to produce evidence in support of its interpretation of the ambiguous term. *See O'Donnell v. United States*, 891 F.2d 1079, 1082 (3d Cir.1989) ("If the moving party has met its burden of proof, the opposing party may not rest on 'the mere allegations or denials of his pleading, but his response ... must set forth specific facts showing that there is a genuine issue for trial.'" (quoting Fed.R.Civ.P. 56(e))); *Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir.1989) (same). Whether such evidence exists in the form of negotiating history, practice under the revised text or otherwise, we do not know. Standing alone, the 1985 contract's reference to an undefined past practice concerning transmission of the record to an umpire in cases where the Board conducts the hearing does not help the Union's case.

On this record, we cannot avoid the conclusion that the significant language changes in the grievance procedure that Racho Trucking points to were meant to effect significant changes in the Conciliation Board's coercive power. Racho Truck-

ing's interpretation gives a consistent single meaning to the term "agreement" at all steps of the grievance procedure. That interpretation is supported by the changes in that text as it evolved over successive contracts. The Union has presented no opposing evidence sufficient to create a genuine issue of material fact as to whether the 1985 agreement gives the Board final and binding power to settle disputes if its members agree on their resolution. *See* Fed.R.Civ.P. 56(e) (the adverse party "must set forth specific facts showing that there is a genuine issue for trial"); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Accordingly, we hold that the district court should have granted Racho Trucking's cross-motion for summary judgment.

## VI.

In summary, we conclude that the Anthracite Wage Agreement of 1985 is ambiguous as to whether the Anthracite Board of Conciliation can impose its decision upon a party that wishes to have an umpire resolve the dispute. The district court should have considered the extrinsic evidence Racho Trucking presented concerning this collective bargaining contract and, from that uncontradicted evidence, interpreted the meaning of the word "agreement" in reference to step 3 proceedings before the Conciliation Board in accordance with Racho Trucking's contention, because the Union has not presented evidence sufficient to create a genuine issue of material fact in support of its interpretation of the meaning of the contract's grievance procedure.

The judgment of the district court will be reversed and these consolidated cases will be remanded with instructions to enter an order granting summary judgment in favor of Racho Trucking.[6]

---

**6.** In practical effect, this order simply returns these disputes to an umpire for binding resolution, in accordance with step 4 of the grievance procedure. It is of course without prejudice to the right of either party to seek judicial aid if the other acts to frustrate this process.