

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-5-2005

# Phoenix v. Prestige Assoc Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3193

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Phoenix v. Prestige Assoc Inc" (2005). *2005 Decisions.* Paper 728.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/728

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 04-3193

———————

PHOENIX LITHOGRAPHING CORP.,

Appellant

v.

PRESTIGE ASSOCIATES, INC.

———————

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 03-cv-01485)
District Judge:  Honorable Mary Little Cooper

———————

Argued June 29, 2005

Before: ROTH, RENDELL, and BARRY, <u>Circuit</u> <u>Judges</u>

(Filed August 5, 2005)

- 1 -

Frank Schwartz [ARGUED]
Flamm, Boroff & Bacine
925 Harvest Drive
Suite 220, Union Meeting
Corporate Center
Blue Bell, PA  19422

*Counsel for Appellant*
*Phoenix Lithographing Corp.*


Marjorie E. Greenfield [ARGUED]
Anderson, Greenfield & Dougherty
4163 Ridge Avenue, 1st Floor
Philadelphia, PA   19129

*Counsel for Appellee*
*Prestige Associates, Inc.*

---

OPINION OF THE COURT

---


RENDELL, <u>Circuit Judge</u>.

On appeal, Phoenix Lithographing Corp. urges us to reverse the District Court's order imposing the burden of proof on Phoenix to demonstrate its continuing lien interest in the machine at issue, notwithstanding its transfer.  We agree with the District Court's ruling and will therefore affirm.

As we write essentially for the parties, our discussion of the facts will be abbreviated.

In 1997, PNC obtained an undisputed perfected security interest in a die cutter (the "Die Cutter") belonging to Taconic Corporation. The security agreement between PNC and Taconic contained a provision which prohibited Taconic from disposing of collateral, except inventory, with limited exceptions:

> 4.3 Disposition of Collateral. Borrower will safeguard and protect all Collateral for Agent's general account and make no disposition thereof whether by sale, lease, or otherwise except (a) the sale of Inventory . . . and (b) the disposition or transfer of Equipment in the ordinary course of business during any fiscal year having an aggregate fair market value of not more than $250,000 and only to the extent that (i) the proceeds of any such disposition are used to acquire replacement Equipment which is subject to Agent's first priority security interest or (ii) the proceeds of which are remitted to Agent to be applied pursuant to Section 2.11.

In October 2000, Prestige Associates, Inc., obtained the Die Cutter from Taconic in exchange for $75,000 in credit against invoices for work performed by Prestige for a third party, Inter Omni. Thereafter, in June 2002, Phoenix acquired PNC's lien on and rights in the Die Cutter.

Thereafter, Phoenix filed a complaint against Prestige asserting its superior right to the Die Cutter, alleging that PNC had a perfected lien on the Die Cutter by virtue of its UCC-1 filing and that "Taconic had transferred possession of the Die Cutter [to Prestige] without PNC's consent and subject to PNC's perfected security interest." (Complaint, Apx. 25) Phoenix therefore claimed rights in the Die Cutter superior to those of Prestige and claimed entitlement to immediate possession of the Die Cutter. In response, Prestige

- 3 -

denied the allegation as to the effect of the lien, and asserted in its Sixth Affirmative Defense, that "PNC released its lien on the Die Cutter prior to defendant's purchase of same." (Apx. 40)

Both parties moved for summary judgment and the Court characterized the issue before it as follows:

> Here, the parties agree that whether Phoenix has a right to possess the Die Cutter turns initially on one issue: the effect of the October 2000 sale on PNC's security interest in the Die Cutter . . . If PNC's rights to the Die Cutter were extinguished by the October 2000 sale, Phoenix cannot prevail at trial. If PNC's rights survived the October 2000 sale, then Phoenix may be able to proceed on its theories of recovery. (Apx. 5-6)

The Court concluded:

> Defendant asserts that the record is devoid of any evidence that these three conditions [that the sale was in the ordinary course of business, that the equipment had fair market value of not more than $250,000, and that the sale proceeds be used to purchase replacement equipment or be remitted to creditor] were not satisfied, and therefore it is entitled to summary judgment because no reasonably jury could conclude that the same was not authorized. We agree. (Apx. 8)

In a footnote to this statement, the District Court stated:

> We recognize the incongruity of speaking in terms of evidence from which a jury could conclude that something did <u>not</u> happen. Nevertheless, at trial Phoenix would have the burden of proving its right to possess the Die Cutter, and one step in that chain is proof that PNC did not lose the security interest in the Die Cutter by virtue of the October 2000 sale. (fn. 2, Apx. 8)

- 4 -

On appeal, Phoenix urges that Prestige had the burden to adduce evidence, by way of its affirmative defense, that the sale was free and clear of liens. It also asserts that the District Court erred in holding that there was no evidence from which a reasonable jury could conclude that the sale of the collateral was not in the ordinary course of business.

The standard of review in an appeal from an order resolving cross-motions for summary judgment is plenary. Cantor v. Perelman, 2005 U.S. App. LEXIS 13977, at *7 (3d Cir. July 12, 2005) (citing Int'l Union, United Mine Workers of Am. v. Racho Trucking Co., 897 F.2d 1248, 1252 (3d Cir. 1990)). This Court applies the test provided in Federal Rule of Civil Procedure 56(c): (a) is there no genuine issue of material fact, and (b) is one party entitled to judgment as a matter of law? Id.

We begin with the basic premise that we believe to be important here: that is, that in order for its suit to succeed, Phoenix had to show its right to possession by proving that PNC's security interest in the Die Cutter, the basis for its rights to the equipment, had continued notwithstanding the sale. Accordingly, we agree with the District Court that Phoenix had to prove that the sale was not authorized. See,e.g., Whirlpool Financial Corp. v. Mercantile Business Credit, Inc., 892 F. Supp. 1256, 1264 (E.D. Mo. 1995). Section 9-306 of the Uniform Commercial Code is controlling:

> 9-306(ii). Except where this article otherwise provides, a security interest continues in collateral notwithstanding the sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds . . .

By virtue of this provision, in order to prove that PNC's interest and, accordingly, Phoenix's interest, "continued in the collateral notwithstanding sale," Phoenix had to prove, affirmatively, that the disposition was not authorized by the secured party in the security agreement. Here, the only way it could prove that was by showing that the conditions set forth whereby the sale would be authorized (namely, the exception to the general prohibition against disposition) had not been met.

As indicated above, the security agreement authorized sales if they were in the ordinary course of business and proceeds were used to acquire replacement equipment or proceeds were remitted to the Agent to be applied against the amount due.[1] The latter element need not detain us long, for there was absolutely no proof offered by Phoenix as to the application or receipt of sales proceeds. Accordingly, we need not decide whether the sale of the Die Cutter was "in the ordinary course of business" because the security agreement required both a sale in the ordinary course and that proceeds were reinvested in Equipment or given to the Agent. Here, because there was no proof about what was done – or not done – with the proceeds, it makes no difference whether the sale was or was not in the ordinary course, inasmuch as the second requirement has not been proven.

Phoenix relies on Rushmore State Bank v. Kurylas, 424 N.W.2d 649 (S.D. 1988) for the proposition that imposing conditions on sales is tantamount to the creation of secret liens. However, its reliance on that case is misplaced, because the facts there were

_____

[1] There is no contention that the $250,000 limit was relevant here.

different.  There, the security agreement permitted a disposition without qualification or limitation, but then stated that the purchaser would not be relieved of the obligations under the relevant agreement.  Thus, authorization to transfer was clearly given, but a condition was imposed upon the transferee.

Here, the authorization is not effective unless the conditions have been met.   The security agreement here does not have a "conditional authorization."   Rather, it contains a provision whereby the authorization to transfer exists only if certain things happen. There is no secret condition imposed on the transferee. Thus, Rushmore is of no aid to Phoenix.

Accordingly, we agree with the District Court that Phoenix failed to meet its burden of proof, and the order of the District Court will be AFFIRMED.

_____