

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-11-2007

# Tylwalk v. Prudential Ins Co

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4525

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Tylwalk v. Prudential Ins Co" (2007). *2007 Decisions.* Paper 97.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/97

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

NO. 06-4525
_____

LOU ANN TYLWALK,
Appellant

v.

PRUDENTIAL INSURANCE COMPANY;
RELIANT ENERGY
_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 04-cv-222J)
District Judge: Honorable. Kim R. Gibson
_____

Argued October 31, 2007

BEFORE: RENDELL and NYGAARD, <u>Circuit Judges</u>,
and McCLURE,[*] <u>District Judge</u>

Filed: December 11, 2007
_____

Carl A. Belin, Jr.    **[ARGUED]**
Belin & Kubista
15 North Front Street
P.O. Box 1
Clearfield, PA  16830
    *Counsel for Appellant*

---

[*]The Hon. James F. McClure, Jr., Senior Judge, United States District Court for the Middle District of Pennsylvania, sitting by designation.

Jonathan Dryer
Salvatore A. Clemente     **[ARGUED]**
Wilson, Elser, Moskowitz, Edelman & Dicker
601 Walnut Street
The Curtis Center, Suite 1130
Philadelphia, PA 19106
  *Counsel for Appellee*

————

OPINION OF THE COURT
————

McCLURE, <u>*District Judge*</u>.

Appellant Lou Ann Tylwalk filed a complaint against appellee, Prudential

Insurance Company ("Prudential") pursuant to the Employee Retirement Income Security

Act, 29 U.S.C. § 1001 <u>et</u> <u>seq.</u> ("ERISA").  After cross-motions for summary judgment

were filed, the district court granted Prudential's motion and denied Tylwalk's motion.

For the reasons provided below, we will reverse and remand.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Tylwalk was a full-time employee of Reliant Energy ("Reliant") working as a

control room operator and a member of Local 459 of the International Brotherhood of

Electrical Workers AFL-CIO ("the Union").  Under the collective bargaining agreement

between the Union and Reliant, employees were provided with life insurance which

included disability benefits ("the Plan").  The Plan provided disability benefits for

individuals who became "totally disabled" and also provided a one-time $20,000

disability payment for an employee who became "totally and permanently disabled."

2

On August 24, 2001, Tylwalk was camping with her family when a large tree fell onto a tent occupied by Tylwalk. As a result of the accident, Tylwalk suffered severe head injuries. These injuries included a closed head injury, multiple facial skeletal fractures, a fractured right frontal bone and supraorbital rim, nasal bone fractures, blowout fracture of the right orbital floor, LeFort I maxillary fracture, fracture of the right coronoid process of the mandible, and facial and scalp fractures and abrasions. Tylwalk underwent an extensive recovery period involving multiple surgeries.

Tylwalk's treating physician was Dr. Guy A. Catone. On May 5, 2003, Dr. Catone opined that "the prognosis for her facial injuries is good and she will be left with some residual disabilities related to moderate double vision in the right eye." Similarly, he stated that "[t]he double vision and psychological problems will be permanent albeit somewhat improved over time."

Tylwalk also received psychological counseling and treatment from Ronald Lingle, a licensed psychologist. On May 16, 2003, Lingle opined that Tylwalk had difficulty working with memory, spatial reasoning, speeded response, and processing multiple sources of information. He stated that he had met with Tylwalk a total of thirty-five times over a fourteen month period and that she could not return to her job as a control-room operator now or in the future. Furthermore, he stated that "it has been over a year and a half since the accident and brain injury, with very little further cognitive recovery expected from this point." Lingle also stated that "[h]er continued reconstructive surgical status combined with her ongoing mood fluctuations would also

preclude any other gainful work in the near future (2-3 years).  Further prognosis past this point will require neuropsychological, psychological, and occupational testing to determine physical, cognitive, and emotional readiness for employment."  Finally, at the end of the report, Lingle stated that he was "hopeful that she can eventually return to the workforce in some capacity as her past excellent work record is a source of pride and self-esteem for [her]."

On March 24, 2004 in a letter, Lingle further opined:

> I would like to clarify that when [the May 16, 2003] report was written, Lou Ann was having a difficult time grieving the loss of her former active and working life and I did not want to imply in a document that she may have access too [sic], that she could never work in any capacity, ever again.  As Lou Ann was/is on two antidepressants, and [sic] anti-anxiety pill, and a sleeping pill, I wanted to express some hope in my letter to you, even though I do not now and never believed that she would work in any capacity again.  Please understand that in my profession, we write every note and letter as if the patient is reading them.  As you know, they own the medical record and can see it at any time by law.

> Therefore, as Lou Ann Tylwalk's treating psychologist, it is my opinion that Lou Ann Tylwalk is totally and permanently disabled from performing any work in any capacity for the remainder of her life.

(emphasis in original).

On February 28, 2003, an Administrative Law Judge for the Social Security Administration determined that Tylwalk was disabled within the meaning of the Social Security Act.  The ALJ concluded that Tylwalk's mental condition met the requirements of Listing 12.02, which is met "when the claimant has psychological or behavioral abnormalities associated with brain dysfunction, with a history and physical examination

4

or laboratory tests demonstrating the presence of a specific organic factor judged to be etiologically related to the abnormal mental state and loss of previously acquired functional abilities."

Tylwalk applied for disability benefits under the Plan. On September 22, 2003, Prudential determined that Tylwalk was "totally disabled" under the Plan but that there was no evidence that she was "totally and permanently disabled" and therefore she was not entitled to the one-time $20,000 disability payment. On December 22, 2003, Prudential denied Tylwalk's request for reconsideration. On June 1, 2004, Prudential denied Tylwalk's appeal.

Following the final denial, Tylwalk filed a complaint in the Court of Common Pleas of Clearfield County, Pennsylvania pursuant to ERISA. The action was removed by Prudential to the United States District Court for the Western District of Pennsylvania. On September 28, 2006, after cross-motions for summary judgment were filed, the district court granted Prudential's motion and denied Tylwalk's motion. This appeal followed.

## II. JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction pursuant to ERISA, 29 U.S.C. § 1132(e)(1). We have appellate jurisdiction to review the district court's final order pursuant to 28 U.S.C. § 1291.

We exercise plenary review of the district court's resolution of cross-motions for summary judgment. Brentwood Med. Assoc. v. United Mine Workers of Am., 396 F.3d

5

237, 240 (3d Cir. 2005) (citation omitted).  Therefore, we apply the same test the district court applied: 1) whether there are no material facts in dispute; and 2) whether one party is entitled to judgment as a matter of law.  Int'l Union, United Mine Workers of Am. v. Racho Trucking Co., 897 F.2d 1248, 1252 (3d Cir. 1990) (citing Fed. R. Civ. Pro. 56(c)).

Under ERISA, an administrator's decision to deny benefits is by default reviewed de novo unless the plan gives the administrator discretionary authority to determine the employee's eligibility.  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).  If the plan gives the administrator discretionary authority, then the decision is reviewed for abuse of discretion.  Id. at 115.  In the instant case, there is no dispute that the Plan gives the administrator discretionary authority to determine eligibility.

In Firestone, the Supreme Court noted that if the administrator has discretion but is operating under a conflict of interest, that conflict should be weighed as a factor when considering whether there was an abuse of discretion.  Id.  In accordance with this requirement, we established a sliding scale approach in Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377, 392 (3d Cir. 2000).  The sliding scale allows for the court to intensify its scrutiny of the administrator's decision to match the degree of conflict that may be present in the administrator's decision-making process.  Id.

Recently, in Post v. Hartford Ins. Co., we elaborated on the process set out in Pinto.  501 F.3d 154, 160-165 (3d Cir. 2007).  We emphasized that the sliding scale

6

approach requires the consideration of both structural and procedural factors. Id. at 162

(citing Pinto, 214 F.3d at 392-93). The structural inquiry focuses on financial incentives

to deny claims while the procedural inquiry focuses on how the administrator treated the

particular claimant. Id.

Turning first to the structural inquiry in the instant case, we begin by noting that in

Pinto, we listed four nonexclusive structural factors to consider: "1) the sophistication of

the parties; 2) the information accessible to the parties; 3) the exact financial arrangement

between the insurer and the company; and 4) the status of the fiduciary, as the company's

financial or structural deterioration might negatively impact the 'presumed desire to

maintain employee satisfaction.'" Pinto, 214 F.3d at 392. The only factor which appears

to have any applicability to the instant case is the financial arrangement of the plan. In

the instant case, the record is scant as to the precise financial arrangement between the

employer and plan administrator. In fact, the record simply contains a stipulation that

states that "the claim review is handled by the Plan Administrator Prudential Insurance

Company" who "has the sole discretion to interpret the terms of the [contract], to make

factual findings, and to determine eligibility for benefits." Furthermore, the stipulation

states that "Prudential also funds the plan through insurance." Finally, the stipulation

states that "the proper standard of review is a sliding scale of heightened scrutiny of the

arbitrary and capricious standard." Thus, although the exact financial arrangement is

unclear, Prudential has stipulated to the fact that it both funds and administers the plan.

7

Therefore, the fact that Prudential has a financial incentive to deny claims warrants a heightening of our review.

Turning to the procedural inquiry, we now consider any procedural irregularities that raise suspicion in the plan administrator's decision-making. We have again already set out a nonexclusive list of procedural irregularities to consider: 1) reversal of position without additional medical evidence; 2) self-serving selectivity in the use and interpretation of physician's reports; 3) disregarding staff recommendations that benefits be awarded; and 4) requesting a medical examination when all the evidence indicates disability. Post, 501 F.3d at 165 (citations omitted). We find that the instant case does present some procedural irregularity. As we will discuss in more detail in our analysis of Prudential's decision, it appears that Prudential completely disregarded the opinion expressed in Lingle's March 24, 2004 letter when it denied Tylwalk's appeal on June 1, 2004. We find this especially relevant because Prudential had already heavily relied on Lingle's opinion when it made its September 22, 2003 and December 22, 2003 denials. In fact, it appears that the only reason Lingle sent the letter was because he believed that Prudential had misinterpreted the opinions he expressed in his previous report. We believe this irregularity constitutes a selective use of medical reports and warrants yet another heightening of our review.

Having found both that Prudential has a strong financial incentive to deny claims (a weighty structural factor) and that Prudential selectively used medical reports (a

8

weighty procedural factor), we will conduct a significantly heightened form of arbitrary and capricious review. Under this review, we will give less deference to Prudential than a pure arbitrary and capricious review, but our review will not be a de novo review. Therefore, our inquiry is not whether Prudential made the same decision as we would have made. Abnathya v. Hoffmann-La Roche, Inc., 2 F.3d 40, 45 (3d Cir. 1993) (citation omitted). Rather, we will searchingly review both the merits and the process to determine whether Prudential's decision to deny permanent disability was the product of reasoned, disinterested discretion. Post, 501 F.3d at 168.

### III. DISCUSSION

#### A. Prudential's Decision to Deny Permanent Disability Benefits

As a preliminary matter, we note that Prudential was not required to determine that Tylwalk was not "totally and permanently disabled" in order to deny her the $20,000 permanent disability benefit. Instead, it only had to conclude that there was not sufficient evidence to determine that she was "totally and permanently disabled." In other words, Tylwalk had to show the permanence of her disability, rather than Prudential's having to show a lack of permanence.

On September 22, 2003, Prudential made its first denial of Tylwalk's claim for permanent disability. When Prudential made its decision, it had before it the medical reports of Dr. Catone and Lingle, as well as the Social Security Administration's decision. The claim was referred to Prudential's medical director, Dr. Kowalski, who concluded

9

that the medical records did not support a finding of permanent disability. In its letter of denial sent to Tylwalk, Prudential relied on Lingle's reference to two to three years of recovery and his statement that he was hopeful that Tylwalk would be able to return to the workforce in some capacity in the future.

On November 26, 2003, Tylwalk submitted an appeal of the denial. In her request, Tylwalk emphasized her belief that Prudential had taken Lingle's statement out of context and that the report read as a whole expresses the opinion that Tylwalk is permanently disabled. On December 22, 2003, Prudential denied the request for reconsideration and once again found that there was no evidence to suggest that Tylwalk was permanently disabled. Prudential again relied on Lingle's reference to two to three years of recovery and his statement that he was hopeful that Tylwalk would be able to return to the workforce in some capacity.

With respect to these first two denials, it is important to note that Prudential had yet to receive Lingle's March 24, 2004 letter in which he clarified his earlier report and stated that he has never believed that Tylwalk would be able to work in any capacity ever again. This is important because our heightened form of arbitrary and capricious review is limited to the record before the plan administrator. Kosiba v. Merck & Co., 384 F.3d 58, 67 n.5 (3d Cir. 2004) (citing Mitchell v. Eastman Kodak Co., 113 F.3d 433, 440 (3d Cir. 1997)).

On April 5, 2004, Tylwalk submitted her second appeal. This appeal did contain

10

Lingle's March 24, 2004 letter. Although not entirely clear from the record, it appears that the letter was not sent to Dr. Kowalski because the claims examiner concluded that it did not contain any objective medical evidence requiring a physician's review. Thus, having dismissed Lingle's letter, Prudential once again rejected Tylwalk's claim of permanent disability on June 1, 2004.

## B. Was the Decision Arbitrary and Capricious?

Having already concluded that the instant case warrants a significantly heightened form of arbitrary and capricious review, we will first consider whether Prudential's decisions were arbitrary and capricious under a pure arbitrary and capricious review. Only if we conclude that the decisions were not arbitrary and capricious must we consider whether the heightening of our review and the decreased deference that it requires warrants a different conclusion.

Even considering Lingle's statements about returning to work, we have concerns with Prudential's initial denial on September 22, 2003 and the denial of her first appeal on December 22, 2003. When making these denials, Prudential had before it the medical reports from Dr. Catone and Lingle which both appeared to opine that Tylwalk's injuries were permanent. In his report, Dr. Catone opined that "[Tylwalk] will be left with some residual disabilities related to moderate double vision in the right eye" and that "[t]he double vision and psychological problems will be permanent albeit somewhat improved over time." Similarly, Lingle opined that Tylwalk had difficulty working with memory,

11

spatial reasoning, speeded response, and processing multiple sources of information" and that there would be "very little further cognitive recovery expected from this point."

Considering these opinions, we do not understand how Prudential could conclude that Tylwalk was "totally disabled" but was not "totally and permanently disabled" when the very same issues that led Prudential to the conclusion that she was "totally disabled" were opined to be permanent by Dr. Catone and Lingle. If we were reviewing this case de novo, we would have never relied on Lingle's discussions about returning to work as evidence that her injuries were not permanent. Instead, we would have relied on Dr. Catone and Lingle's opinions regarding the permanence of her injuries. Nevertheless, we will decline to rule on whether Prudential's first two denials were arbitrary and capricious. We simply emphasize that these first two denials are suspect, which only strengthens our belief that the third denial was arbitrary and capricious.

We now turn to Prudential's third denial which occurred on June 1, 2004. Unlike the previous two denials, Prudential did have Lingle's March 24, 2004 letter before it when it made this denial. Yet, the letter was discounted because Prudential believed that it contradicted Lingle's prior report and because it contained no medical evidence.

At the very least, Lingle's prior report was subject to interpretation as to whether he opined that Tylwalk's disability was permanent. We say at the very least because, as we have just discussed, interpreting the prior report as suggesting that her disability was not permanent was borderline unreasonable. The other more reasonable interpretation is

12

that the report expresses the opinion that Tylwalk is permanently disabled. Considering that the earlier report is open to interpretation, it is inaccurate to characterize the March 24, 2004 letter as a contradiction of the earlier report. This could only be the case if the earlier report unequivocally expressed the opinion that her disability was not permanent. Rather, the letter clarifies any ambiguity that may have existed in his report and should have indicated to Prudential that it had misinterpreted the opinion expressed in the earlier report. Similarly, we do not believe that the letter can be discounted due to a lack of medical evidence. Because the letter's purpose was to clarify his earlier report, rather than a change in his opinion, he was obviously still relying on the medical evidence in the earlier report.

Having found that there is no basis to disregard Lingle's March 24, 2004 letter, we believe our decision becomes quite simple. Lingle's letter unequivocally expresses an opinion of permanent disability. Furthermore, Dr. Catone's report suggests that Tylwalk's vision problems are permanent. Finally, there is no evidence in the record that would contradict either of these two opinions, such as an independent medical review performed by Prudential. Therefore, we find that Prudential's decision to deny permanent disability on June 1, 2004 was arbitrary and capricious even under a pure arbitrary and capricious standard of review, and this is sufficient to warrant a reversal of the district court.

13

## IV.  CONCLUSION

Because Prudential's decision to deny permanent disability benefits was arbitrary and capricious, we reverse the District Court's grant of summary judgment in favor of Prudential and grant Tylwalk's motion for summary judgment.  We will remand the case for a determination of whether an award of attorney's fees is appropriate.