OPINION OF THE COURT
RENDELL, Circuit Judge.
United Food and Commercial Workers and Participating Food Industry Employers, Tri-State Health & Welfare Fund, et al., (“Tri-State Fund” or the “Fund”) appeal following a bench trial. At trial the Fund sought to recover delinquent retiree health and welfare contributions from Super Fresh Food Markets (“Super Fresh”) and The Great Atlantic and Pacific Tea Company, Inc. (“A&P”). The Fund also sought a determination that Super Fresh and A&P were alter-egos and/or joint employers and were therefore jointly and severally liable for the delinquent benefits.
The Fund
The Fund is a jointly administered multi-employer and multi-union employee benefit plan that is largely funded by participating employers’ contributions pursuant to their respective collective bargaining agreements (“CBAs”). An Agreement and Declaration of Trust (“Trust Agreement”) created and governs the administration of the Fund. The Trust Agreement states that the Board of Trustees of the Fund (the “Trustees”) has the authority to administer the Fund on behalf of the participants and beneficiaries. However, this authority must be exercised “consistent with” the CBAs and is “subject to” the CBAs. App. 8-9.
The CBAs
Super Fresh executed Participation Agreements (“PAs”) with Local Unions 27, 1358, and 1360 that obligated it to contribute to the Fund as required under its CBAs with the unions. Likewise, A&P entered a similar CBA and PA with Local 1360. The Super Fresh CBAs contained a Preamble (the “separateness preamble”), which stated that Super Fresh and A&P “are different and separate operating retail units.” App. 10-11, 13, 16. Article 25 of the CBAs stated that Super Fresh agreed to make contributions on behalf of “eligible associates,” meaning active employees. App. 11, 13, 17. The CBAs also contained unlimited Maintenance of Benefit clauses (“MOBs”), which indicate that if the cost of the benefits exceeds the contribution rate agreed to in the CBA, the Trustees may increase the contribution rate to maintain that level of benefits. Under Appendix C of the Super Fresh *724 CBAs, the employer was to pay monthly a dollar rate (contribution rate) multiplied by the number of active employees. Appendix C specifically references that this monthly contribution provides coverage for active employee benefits and retiree benefits, including “Retiree BC/Med/Surgical, Retiree Rx Drug, Retiree Vision, and Retiree Dental.” App. 1605. Appendix C of the Super Fresh CBAs also stated that “all questions involving Health & Welfare, not specifically set forth herein, shall be determined by the provisions of the Agreement and Declaration of Trust governing the Plan.” App. 14, 16, 22, 25. The A&P CBA is similar to the Super Fresh CBAs, but it does not contain the separateness preamble, nor does it specifically reference retiree benefits.
The Retiree Benefits Methodology
Prior to May 2003, employers contributed to the Fund as set forth in the CBAs based on the number of active employees in the Fund and a component of that contribution was used to pay for retiree benefits as to the entire Fund. This methodology resulted in large discrepancies for some employers between the number of their own retirees and the amount they were paying to finance retirement benefits for the retirees in the Fund, so the Trustees revised the methodology in order to address these discrepancies. Pursuant to the methodology change, each employer was required to contribute based on its number of active employees and its number of retired employees in the Fund.
While it is understandable that the Trustees would want to correct this discrepancy, they did not have authority to do so in a way that contradicted the CBAs. The District Court found that the change in the funding methodology was impermissible and did not reach the issue of the reasonableness of the change.
The Transfer Back to the Fund
In 2003, Local 27 Super Fresh employees, Local 27 Super Fresh retirees, and Local 27 A&P retirees were transferred from the Tri-state Fund to the Local 56 Benefit Fund. In October 2004, Local 27 and Super Fiesh began negotiating over a successor CBA, and a memorandum of agreement (“MOA”) was signed on July 27, 2005. A&P was not a party to the MOA and the separateness preamble was carried over onto the new MOA. The initial MOA included Super Fresh’s agreement to transfer active employees currently participating in Local 56 to the Tri-state Fund, but did not mention Super Fresh or A&P retirees. After Local 27 threatened to strike, Super Fresh agreed to include retirees in the fund, but did not specify that this included A&P retirees. A new MOA was signed and Super Fresh agreed to pay for Super Fresh retirees pursuant to the new methodology. The Trustees requested that the transfer be memorialized in a Participation Agreement and a few drafts of this agreement went back and forth between the parties. Super Fresh rejected a draft of the PA that referenced A&P retirees and returned a draft that “explicitly exclud[ed]” A&P. App. 43. The signed PA defines the “Employer” as Super Fresh, states that the “Employer” will contribute for each of the “Employer’s retirees” and does not mention A&P or its retirees. App. 44. The District Court determined that A&P retirees were not part of the PA and that Super Fresh was not required to contribute for A&P retirees. Because the District Court found that the PA was unambiguous, that Court did not reach the question of whether Super Fresh and A&P are alter egos.
Legal Standard
We review findings of fact for clear error and defer to the District *725 Court’s credibility determinations but review conclusions of law de novo. Pension Benefit Guar. Corp. v. White Consol. Indus., 215 F.3d 407, 409 (3d Cir.2000). “[C]ontract interpretation-the determination of ‘what ideas [the contract] language induces in other persons’ — is a question of fact reviewed under the clearly erroneous standard, whereas contract construction— ‘the determination of the legal relations of the parties’ to the contract-is a question of law reviewed under the de novo standard.” Tracinda Corp. v. DaimlerChrysler AG, 502 F.3d 212, 229-30 (3d Cir.2007) (citations omitted). When reviewing for clear error, findings of fact may only be overturned if they are “completely devoid of a credible evidentiary basis or bears no rational relationship to the supporting data.” Id. at 230. The question of whether the terms of a CBA are ambiguous is a question of law. United Mine Workers of Am. v. Rocho Trucking, 897 F.2d 1248, 1252 (3d Cir.1990). We review the District Court’s ruling on the admissibility of evidence for abuse of discretion. Moyer v. United Dominion Indus., 473 F.3d 532, 542 (3d Cir.2007).
The Trustees did not have the authority to change the funding methodology for retiree benefits
The District Court found that the Trustees did not have the authority to change the methodology because the change contradicted the written provisions of the applicable CBAs, which provided that the “employer would be obligated to pay the established rate per each active employee.” App. 53-54. Both parties agree that we review this finding for clear error.
Appellants argue that the CBAs do not establish a methodology for determining contribution for retiree benefits, but merely state that employers are required to contribute to the Fund based on their number of active employees. Because the CBAs did not “specifically” establish any methodology for distributing retiree benefits, Appellants contend that the Trustees had broad authority to formulate provisions for the payment of benefits under the Trust Agreement as long as the changes are “subject to” and “consistent with” the CBAs. Appellants concede that the CBAs require employers to multiply the number of active employees by a dollar amount, and this dollar amount accounts for both the costs of active and retiree employee benefits, but urge that the CBAs do not contain a methodology by which the dollar amount is calculated.
The District Court concluded that the CBAs clearly stated that the employer’s contribution would be determined by a monthly dollar rate multiplied by their active employees and the language of the Trust Agreement manifests an intent that the CBAs should prevail because it clearly states that the powers of the Trustees are “subject to” and must be “consistent with” the CBAs. Because the change in methodology contradicted the written terms of the CBAs, the District Court found that the Trustees lacked the authority to implement it.
The District Court’s conclusions are supported by the record. Appendix C of the Super Fresh CBAs indicates that part of the employer’s overall contribution would go to retiree benefits and the method in which these contributions were distributed may well have been within the discretion of the trustees. There is only one overall contiibution methodology — i.e. based on their number of active employees (times a dollar rate) — that is set forth specifically in the CBAs. The unlimited MOBs may have given the trustees the authority to raise the dollar rate per active employee, but they did not have the authority to contra- *726 diet the bargained-for CBAs by requiring the employers to contribute per retiree.
Appellants next contend that, as a third party beneficiary of the CBAs, the Fund can adopt rules that conflict with the CBAs as long as these are not arbitrary or capricious and that the District Court erred in excluding evidence concerning the reasonableness of the Trustees’ decision. However, as cited by Appellants, the arbitrary and capricious standard is only relevant if the Trustees had discretion with respect to the exercise of a power. Moench v. Robertson, 62 F.3d 553, 566 (3d Cir.1995) (citing Restatement (Second) of Trusts § 187).
Appellants do not dispute that the Trust Agreement mandated that any changes the Trustees made were “subject to” and had to be “consistent with” the CBAs. The Trust Agreement governs the Trustees’ authority and the District Court found that the change in methodology was not consistent with the CBAs, therefore the Trustees did not have the authority to make the change under the Trust Agreement. The arbitrary/capricious standard does not apply unless the Trustees had the authority under the Trust Agreement to change the methodology. See Moench, 62 F.3d at 566 (“[wjhere discretion is conferred upon the trustee with respect to an exercise of a power, its exercise is not subject to control by the court, except to prevent an abuse by the trustee of his discretion.”) (citation omitted). Therefore, the District Court did not err in not considering the Trustees’ decision under an arbitrary and capricious standard.
Super Fresh was not liable to remit retiree contributions for A&P retirees who transferred to the Tri-State Fund
It is undisputed that Super Fresh and Local 27 negotiated an MOA and a PA for the transfer of Super Fresh retirees to the Tri-State Fund. The District Court found that the Participation Agreement was unambiguous in that it did not include A&P retirees and did not allow appellants to introduce evidence that Super Fresh/ A&P are alter egos.[1] The Court further held that even if the PA were ambiguous, the extrinsic evidence established that Super Fresh did not agree to transfer and pay for A&P retirees.
Appellants state that it is well-established that alter-ego/joint employer theories of liability can be used to recover delinquent contributions under Section 515 of ERISA. Here, however, if the PA conclusively says that Super Fresh did not agree to fund A&P retirees, as the District Court held, then there are no delinquent contributions. As the District Court pointed out, even if Super Fresh and A&P were alter egos, they could still contract to pay for transfer Super Fresh retirees only; “either it was an agreement to pay for Super Fresh and A&P retirees or it was an agreement to pay for Super Fresh retirees period. It doesn’t really matter that *727 they might be parading around as the same company....” App. 243.
Appellants argue that if the Trustees viewed the name Super Fresh as encompassing A&P because they believed they were one and the same, then the reference to Super Fresh retirees could be read to include A&P retirees. This argument is weakened, however, by the inclusion of the separateness preamble and, in particular, the fact that one version of the PA that explicitly referenced A&P retirees was rejected by Super Fresh and replaced with a draft that omitted A&P retirees. In addition, the Local 27 President specifically told the Super Fresh representative during negotiations that A&P retirees should also be included in the transfer. This demonstrates that both parties realized that A&P and Super Fresh were not the same entity. The District Court was correct in finding that the PA did not encompass A&P retirees and therefore evidence as to alter-ego liability was irrelevant because there were no delinquent contributions.
Lastly, appellants contend that the District Court made clearly erroneous findings of fact with regard to the negotiations leading up to the MOA and the PA. These facts would only be relevant if the MOA or the PA were ambiguous as to which retirees were transferred to the Fund. Because the District Court did not err in concluding that these agreements were unambiguous, we need not reach this issue.
For the reasons set forth above, we will AFFIRM the Order of the District Court.

. Appellees maintain that this objection is waived on appeal because Appellants never actually proffered this evidence and there was no ruling on its admissibility. Appellants respond that they did not waive this argument because they opposed bifurcation of the trial on the alter-ego theory. Trial counsel for appellants initially expressed some hesitation regarding bifurcation and that it would be difficult to decide some of the issues in a vacuum. The trial counsel also told the District Court that it would be difficult to deal with the Local 27 transfer issue without the alter-ego/joint employer claim. The Court never precluded this evidence, but held that it was premature and irrelevant if the Court found that the contract did not include A&P retirees. Because counsel objected to the bifurcation of this issue, we will consider it.